LOUIS B. POULET et al., Plaintiffs-Appellants, v. H.F.O., L.L.C., et al., Defendants-Appellees (Jerald Lasky et al., Defendants).

First District (2nd Division)  No. 1—03—2109

Opinion filed September 30, 2004.

John Bernard Cashion, of Chicago, for appellants.

Meckler, Bulger & Tilson, of Chicago (Bruce R. Meckler, Christopher E. Kentra, and James G. Argionis, of counsel), for appellees.

PRESIDING JUSTICE BURKE delivered the opinion of the court:

Plaintiffs Louis Poulet (Poulet) and Holly Geraci (Geraci), owners of individual units in Union Square Condominiums (Union Square), appeal from an order of the circuit court dismissing with prejudice (1) count II of Poulet's second amended complaint (based on a claim of conversion) and count III (based on a claim of common law constructive fraud) and (2) Geraci's complaint, in its entirety, against defendants H.F.O., L.L.C. (H.F.O.), and Spectrum-Hubbard Limited Partnership (Spectrum),[1] as well as (3) the trial court's denial of their motion to reconsider. On appeal, plaintiffs contend that: (1) the trial court erred in dismissing Poulet's counts for conversion and common law constructive fraud with prejudice for lack of standing pursuant to section 2—619(a)(9) of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2—619(a)(9) (West 2002)); (2) the trial court abused its discretion in dismissing Geraci's complaint with prejudice pursuant to section 2—619(a)(3) of the Code (735 ILCS 5/2—619(a)(3) (West 2002)) on the basis that there was "another action pending between the same parties for the same cause"; (3) the trial court erred in dismiss-

---

[1]Poulet and Geraci are the only defendants involved in this appeal.

ing both Poulet and Geraci's count I, in which they alleged a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2000)) (hereinafter consumer fraud count), based on the statute of limitations; and (4) their right to bring an action for common law fraud or wilful misconduct may not be impaired by the declarations, bylaws or other regulations which have the effect of exculpating such conduct. For the reasons set forth below, we affirm.

## STATEMENT OF FACTS

On November 5, 2001, Todd Cameron, Poulet, Deepak Agrawal, Michael Petrushansky, Tamara and Thomas Crawford, Adam and Samantha Stolberg, Gregg and Michelle Schwartz and Raymond DeVos (collectively, the Cameron plaintiffs) filed a complaint in the trial court seeking monetary damages on behalf of themselves and all past and present owners of the condominium units in Union Square located at 333 West Hubbard Street in Chicago. The Cameron plaintiffs' complaint was filed through their attorney, Peter Geraci, who also owned a condominium unit at Union Square. The Cameron plaintiffs' complaint, which we mention only briefly here,[2] contained various claims of breach of fiduciary duty, fraud and/or certain "construction defects" against H.F.O., the developer of the condominiums; Spectrum, the manager of H.F.O.; Jerald Laskey, president of H.F.O. and officer of Spectrum; Spectrum Real Estate Services, Inc. (Spectrum Real Estate), a corporation which marketed and sold the condominiums; Murray Peretz, a partner at H.F.O., partner at Spectrum and officer of Spectrum Real Estate; Exelon Thermal Technologies, Inc. (Exelon), a corporation that contracted with the developer to install and supply Union Square's heating and cooling equipment; and Merger Construction Services, Inc. (Merger), a company that rehabilitated and constructed the condominium units. The Cameron plaintiffs also filed a petition for a temporary restraining order to stop the above-named defendants from negotiating with the president of the board of managers of Union Square's condominium association (Association) and to stop the Association from releasing the developer from liability without the consent of all the unit owners, but this petition was subsequently denied.

All defendants except Exelon collectively filed a motion to dismiss, claiming, *inter alia*, that the Cameron plaintiffs lacked standing to bring the above claims and that the complaint was "nothing more than a frivolous attempt to interfere with a settlement between the

---

[2]The Cameron plaintiffs' complaint is not at issue in this appeal.

[Association] and the building's developer." The trial court granted defendants' motion to dismiss, in part, by dismissing with prejudice all counts based on breach of fiduciary duty, one count of fraud against Exelon and one count based on "construction defects" against H.F.O. and Merger, reasoning that these counts involved "an Association claim," and, thus, the Cameron plaintiffs lacked standing to bring them. As a result, Exelon and Merger were dismissed from the lawsuit.

On May 6, 2002, the Cameron plaintiffs filed an amended complaint, alleging "theft of funds," fraud and breach of contract against defendants H.F.O., Spectrum, Laskey, Spectrum Real Estate, Peretz and Merger. On June 4, defendants collectively filed a motion to dismiss all counts, arguing that, pursuant to section 2—615 of the Code (735 ILCS 5/2—615 (West 2002)), the Cameron plaintiffs' claims failed to meet the requisite pleading requirements, and, pursuant to section 2—619(a)(9) of the Code (735 ILCS 5/2—619(a)(9) (West 2002)), the Cameron plaintiffs lacked standing to bring the claims because such claims were based on the Association's interests. Defendants also filed a motion to disqualify Peter Geraci as the Cameron plaintiffs' counsel, alleging, among other things, that he was an owner of a unit at Union Square, he had filed a lawsuit against several former board members of the Association, alleging that they had squandered the Association's funds, and he had personal knowledge of this case that would make him a material witness. The Cameron plaintiffs subsequently withdrew Peter Geraci as their attorney and substituted attorney John Cashion (Cashion) to represent them. On June 26, the Cameron plaintiffs filed a motion for leave to file a second amended complaint, which was denied by the trial court on July 2. On August 19, the trial court stated that the hearing on defendants' motion to dismiss would be set for September 12.

On August 21, Geraci (Peter Geraci's wife), through her attorney, Cashion (the same attorney used by the Cameron plaintiffs), filed a complaint, case No. 02 L 010724, individually and as a representative of a class of all current and former owners of units in Union Square, against defendants H.F.O., Lasky, Peretz and Spectrum, alleging claims of consumer fraud, conversion, common law constructive fraud and common law fraud. In her complaint, Geraci alleged the following general information: Union Square was composed of 217 dwelling units, some of which had been combined into single dwelling units and were first offered for sale in 1996; Geraci had purchased her units directly from the condominium developer; Geraci and her husband owned approximately 3% of the total ownership in Union Square; and the Association administered Union Square as an agent on behalf of the unit owners.

In support of her counts alleging conversion and common law constructive fraud claims, Geraci alleged the following: prior to the first election of the Association's board of managers (the first election), the unit owners paid money into a separate bank account, which was held in the Association's name; the Association did not own the funds in the Association's bank account but, rather, each plaintiff had a percentage of ownership interest in the funds; payments from the Association's account were to be made *solely* for maintenance and operating expenses of the condominium units; prior to the first election, H.F.O. held and exercised all of the rights, powers and privileges vested in the board of managers; prior to the first election, Lasky and Peretz directed that checks be delivered from the Association's account solely for the benefit of themselves, H.F.O. and Spectrum; the first election took place in November 1999; several of the Association's elected board members were employees or officers of H.F.O. who had purchased units in Union Square; after the first election, Lasky and Peretz, acting on behalf of H.F.O. and Spectrum, again directed that checks be delivered from the Association's account for the benefit of themselves, H.F.O. and Spectrum; there were no records showing the reasons these funds were paid from the Association's account; the unit owners demanded that the funds be returned, but no defendant complied with the demand; and defendants at all times owed a fiduciary duty[3] that was breached when funds were taken from the Association's account.

In support of her counts based on consumer fraud and common law fraud, Geraci alleged that a property report, prepared at the direction of Lasky and Peretz and effective November 1, 1996, made false representations with respect to the common elements, landscaping, courtyard, fire suppression system, storage facilities and masonry repairs, which generated expenses to the unit owners; that statements in the first amendment to the property report were false; that the property report and amendments thereto made material representations and concealed certain facts resulting in the unit owners being required to pay additional assessments; and that the unit owners would not have purchased their unit had they known that they would be liable for the additional assessments.

With respect to the Cameron plaintiffs, on September 12, the trial court granted their motion for voluntary dismissal of certain individual plaintiffs, leaving *only* Poulet and Deepak Agrawal as plaintiffs named in the litigation. Also, on September 12, the trial court granted

---

[3]Geraci did not allege to whom this fiduciary duty was owed, *i.e.*, either to the Association or the individual unit owners or both.

defendants' motion to dismiss the Cameron plaintiffs' complaint pursuant to section 2—615 of the Code, and plaintiffs Poulet and Agrawal were given leave to file a second amended complaint.

On September 19, Poulet, the *only* remaining plaintiff from the group collectively called "the Cameron plaintiffs," filed a second amended complaint, on behalf of himself and all past and present owners of the condominium units of Union Square, against defendants H.F.O., Lasky, Peretz and Spectrum, alleging claims based on consumer fraud, conversion, common law constructive fraud and common law fraud. The allegations contained in Poulet's four counts against the same defendants were nearly identical to the allegations in Geraci's complaint supporting her same counts based on consumer fraud, conversion, common law constructive fraud and common law fraud. The only difference of consequence between the two complaints was that Poulet alleged in his complaint that he owned only a .5% interest in Union Square's total ownership, whereas Geraci alleged that she and her husband owned a 3% interest in Union Square's total owner- ship, and Poulet's complaint, unlike Geraci's complaint, additionally sought declaratory judgment against the Association, requesting, *inter alia*, a declaration that the Association's board of managers had breached its fiduciary duty by intending to settle with defendants, that the Association did not have the power to release the legal rights and claims of the individual owners without their express consent and that any purported release made without the express consent of the individual unit owners had no legal effect and be declared void.

H.F.O., Lasky, Peretz and Spectrum filed a motion to consolidate case No. 02 L 010724 (Geraci's case) with case No. 01 L 014154 (Pou- let's case), which the trial court granted on October 15. On November 22, defendants filed a motion to dismiss all counts of both Geraci's complaint and Poulet's second amended complaint. Defendants again argued that all counts in Poulet's second amended complaint should be dismissed, pursuant to section 2—619 of the Code, for lack of stand- ing and, pursuant to section 2—615 of the Code, for being insufficient as a matter of law. Defendants argued that the Geraci action should be dismissed, pursuant to section 2—619 of the Code, on the basis that there was "another action pending between the same parties for the same cause."

On May 30, 2003, the trial court entered a memorandum and order on defendants' motion to dismiss. The trial court first noted that "Poulet's Second Amended Complaint and Geraci's Complaint

contain identical Counts I-V,"[4] and dismissed Geraci's complaint with prejudice pursuant to section 2—619(a)(3) of the Code because Poulet's lawsuit constituted "another action pending between the same parties for the same cause." The trial court stated that, with respect to count I, the consumer fraud count, and count IV, alleging common law fraud, plaintiffs had standing "because they are alleging that they personally would not have bought their units had they been aware [of the] misrepresentations. These are individual claims, not claims belonging to the Association ***." However, the trial court also found that count I, the consumer fraud count, failed to allege sufficient facts to state a cause of action and was barred by the applicable three-year statute of limitations because the property report, upon which the consumer fraud counts were based, was dated November 1, 1996, and plaintiffs alleged no facts to support the applicability of any discovery rule. Thus, the trial court dismissed count I of Poulet's second amended complaint without prejudice. The trial court then noted that, with respect to Poulet's second amended complaint, count II for conversion was based on the theory that defendants converted funds belonging to the Association, and further noted that count III for constructive fraud was based on the theory that defendants committed constructive fraud in connection with the Association's funds. The trial court stated that, "although the Illinois Condominium Property Act does not vest exclusive jurisdiction in the Association for claims affecting the interests of the Association or unit owners in common [citation], the bylaws of the Association do," and dismissed counts II and III for lack of standing. The trial court also dismissed all claims against Lasky and Peretz because plaintiffs had failed to allege any facts to support personal liability against them. Finally, the trial court dismissed without prejudice count IV, alleging a claim for common law fraud, and count V, setting forth class action allegations, without prejudice based on plaintiffs' failure to allege sufficient facts to state a cause of action.[5]

On June 2, 2003, plaintiffs filed a motion to reconsider the trial court's May 30 order. On July 8, plaintiffs filed an emergency motion for immediate class certification and an emergency motion "to prohibit further communication with prospective class members and to suspend the effectiveness of any 'opt-out' document already signed by an owner in the condo and for other relief." On July 16, the trial court denied

---

[4]Count V of both Geraci's complaint and Poulet's second amended complaint sought to meet the requirements of a class action.

[5]The trial court also granted defendants' motion to strike various paragraphs of Poulet's count VI, seeking declaratory judgment.

plaintiffs' motion to reconsider its May 30 order, but granted plaintiffs' motion to make an express finding that there was "no just cause to delay enforcement or appeal" of (1) the dismissal with prejudice of Poulet's counts for conversion and common law constructive fraud and (2) the dismissal of Geraci's complaint in its entirety. Due to the trial court's finding that there was "no just cause to delay enforcement or appeal" of the above dismissals, plaintiffs' emergency motions were stricken without prejudice.

This appeal followed.

## ANALYSIS

### I. Standing

Plaintiffs contend that the trial court erred in dismissing, pursuant to section 2—619(a)(9), Poulet's count II, which was based on a claim of conversion, and count III, which was based on a claim of common law constructive fraud, with prejudice, finding that plaintiffs lacked standing to pursue these claims because they belonged to the Association. Plaintiffs argue that, although Poulet's allegations supporting his claims for conversion and common law constructive fraud concerned funds taken from the Association's account, Poulet's other allegations, that the funds in the Association's account were not owned by the Association and were the product of each individual unit owner's contribution, conferred to Poulet an individual interest in the claims against the Association's account, thus providing him with the necessary standing to pursue such claims. Plaintiffs maintain that the decision in *Tassan v. United Development Co.*, 88 Ill. App. 3d 581, 410 N.E.2d 902 (1980), supports their position that individual unit owners have standing in a class action to seek their own individual damages.

H.F.O. and Spectrum (hereinafter defendants) argue that the *Tassan* decision is inapplicable to the types of claims brought by plaintiffs in this case and that the trial court's dismissal was clearly proper because "[t]he Illinois Condominium Property Act and the Union Square Declaration and By-Laws demonstrate that only the Board of Managers on behalf of the Association has standing to pursue the type of claims *** sought by Poulet [in his counts for conversion and common law constructive fraud]."

■ Section 2—619(a)(9) permits dismissal of a claim when "the claim asserted *** is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2—619(a)(9) (West 2002); *Glisson v. City of Marion*, 188 Ill. 2d 211, 220, 720 N.E.2d 1034 (1999). "The phrase 'affirmative matter' refers to something in the nature of a defense that negates the cause of action completely or refutes crucial conclusions of law or conclusions of material fact

contained in or inferred from the complaint," and lack of standing is such an "affirmative matter" that is properly raised under section 2—619(a)(9). *Glisson*, 188 Ill. 2d at 220. Our standard of review of an order granting a motion to dismiss pursuant to section 2—619(a)(9) is *de novo*. *Glisson*, 188 Ill. 2d at 220.

■ The Condominium Property Act (Act) (765 ILCS 605/1 *et seq.* (West 1996)) governs the affairs of Illinois condominium associations. *Board of Managers of Weathersfield Condominium Ass'n v. Schaumburg Ltd. Partnership*, 307 Ill. App. 3d 614, 619, 717 N.E.2d 429 (1999); *Adams v. Meyers*, 250 Ill. App. 3d 477, 488, 620 N.E.2d 1298 (1993). The creation and operation of Illinois condominium associations is comprehensively regulated by the Act. *Board of Managers of Weathersfield Condominium Ass'n*, 307 Ill. App. 3d at 619; *Adams*, 250 Ill. App. 3d at 488. Section 9.1(b) of the Act states:

"Board of Managers' standing and capacity.

The board of managers [of a condominium association] shall have standing and capacity to act in a representative capacity in relation to matters involving the common elements or more than one unit, on behalf of the unit owners, as their interests may appear." 765 ILCS 605/9.1(b) (West 2002).

The historical and practice notes accompanying section 9.1 of the Act state that the Act was amended by the legislature to clarify that the boards of condominium associations have standing to sue on all matters that affect more than one unit. 765 ILCS Ann. 605/9.1, Historical & Practice Notes, at 56-57 (Smith-Hurd 1993); *Sandy Creek Condominium Ass'n v. Stolt & Egner, Inc.*, 267 Ill. App. 3d 291, 296, 642 N.E.2d 171 (1994). Accordingly, the handful of Illinois cases dealing with section 9.1(b) of the Act have interpreted the section as conferring standing to condominium associations for certain types of claims involving the common elements or more than one unit. See, *e.g., Sandy Creek Condominium Ass'n*, 267 Ill. App. 3d at 296 (a condominium association had standing to pursue an action against the developer for fraudulently misrepresenting to the unit owners that the buildings were constructed in substantial compliance with the plans of the condominium and that the buildings were free of defects and constructed in a good and workmanlike manner); *St. Francis Courts Condominium Ass'n v. Investors Real Estate*, 104 Ill. App. 3d 663, 668, 432 N.E.2d 1274 (1982) (a condominium association had standing to challenge an amendment to the condominium declaration made by the condominium's developer); *Tassan*, 88 Ill. App. 3d at 596 (acknowledging that a condominium association would not have standing to assert a claim for breach of implied warranty of habitability "but for the fact that [section 9.1(b) of the Act] apparently gives the association standing to assert the unit owners' rights in the common elements").

In the instant case, Poulet's allegations of conversion and constructive fraud, which concerned the mishandling of funds in the Association's account, were obviously matters involving more than one unit within Union Square, and, thus, it is clear that, pursuant to section 9.1(b) of the Act, the Association had standing to act in a representative capacity for the individual unit owners and to assert the claims of conversion and common law constructive fraud alleged in Poulet's complaint. However, the issue in the instant case is whether the Association had *exclusive* standing to assert such claims, thus barring plaintiffs in the instant case from bringing them.

With respect to a condominium association's funds, the issue of whether claims of conversion and common law constructive fraud belong exclusively to the condominium association presents a matter of first impression in Illinois. Plaintiffs rely heavily upon the *Tassan* decision for the proposition that individual unit owners have standing to seek their own individual damages in a class action. In *Tassan*, seven condominium owners brought a class action, on behalf of themselves and all past and present owners of the condominium units, for breach of an implied warranty of habitability and breach of express warranty against, among others, United Development Company (United), the company which developed and sold the condominium units to the individual owners. *Tassan*, 88 Ill. App. 3d at 584. The allegations in the plaintiffs' count for breach of an express warranty referenced statements that were made in the individual contracts for sale of the units. *Tassan*, 88 Ill. App. 3d at 585. The plaintiffs also alleged, in support of both of their claims, several defects within the building that affected the common areas and the individual units. *Tassan*, 88 Ill. App. 3d at 584-85. The plaintiffs further alleged that, as a result of the defects, they would suffer pecuniary damage because the condominium association would spend money to repair the defects, which, in turn, would be assessed to them as members of the association. *Tassan*, 88 Ill. App. 3d at 585. The trial court dismissed both counts on grounds irrelevant to standing issues. *Tassan*, 88 Ill. App. 3d at 585.

On appeal, United argued that the plaintiffs lacked standing to bring their action because they were attempting to assert the rights of the condominium association, rather than their own, individual rights, and that only the association could assert those rights. *Tassan*, 88 Ill. App. 3d at 595. Thus, the *Tassan* court had to address whether a condominium association had exclusive standing to bring claims of breach of an implied warranty of habitability and breach of an express warranty. *Tassan*, 88 Ill. App. 3d at 595. The *Tassan* court acknowledged that section 9.1 of the Condominium Property Act gave

condominium associations the power to bring an action on its own behalf (*Tassan*, 88 Ill. App. 3d at 595-96), but noted:

> "The difficulty with United's argument is the presumption that the plaintiffs are attempting to assert rights of the association rather than their own individual rights. *** These rights of ownership arose as a result of the individual contracts for sale between United and each individual buyer. *** In both [counts], it is the contracts between United and the individual buyers that created these warranties.
>
> Hence, it is not the association's rights that are being asserted here but the contract rights of each individual purchaser of the condominium units. If anything, it is the association who would have no standing in this action but for the fact that the amendment to section 9.1 of the Condominium Property Act apparently gives the association standing to assert the unit owners' rights in the common elements. We find nothing in the Condominium Property Act that indicates an intent on the part of the legislature to transfer the unit owners' contract rights to the condominium association.
>
> Hence, we hold that plaintiffs have standing to bring this action." *Tassan*, 88 Ill. App. 3d at 596.

We find *Tassan* distinguishable from the instant case. *Tassan* held that individual condominium unit owners could bring a class action for claims of breach of an implied warranty of habitability and breach of an express warranty that were based on the individual contracts for sale of the condominium units against a developer of the condominium. *Tassan*, 88 Ill. App. 3d at 596. Thus, *Tassan* dealt with *individual contract rights*. We agree that "[s]ection 9.1 of the Act does not in any way deny an individual unit owner the right to assert an individual contract right." *St. Francis Courts Condominium Ass'n*, 104 Ill. App. 3d at 667. However, in the instant case, Poulet, in counts II and III of his second amended complaint, did not attempt to assert any individual contract right that arose out of an individual contract for sale of a unit. Rather, Poulet's counts II and III involved claims for conversion and common law constructive fraud in connection with *funds in the Association's account*. Poulet alleged that, both before and after the election of the first board of managers, Lasky and Peretz, acting on behalf of H.F.O. and Spectrum, directed funds to be paid *from the Association's account* for the benefit of themselves, H.F.O., and Spectrum. Thus, unlike the issue presented in *Tassan*, which involved *individual contract rights*, the question presented in the instant case is whether the Association had exclusive standing to bring claims of conversion and common law constructive fraud that related to the mishandling of funds in its own account.

Although our independent research reveals no case in Illinois that has dealt with this specific issue, we find *Siller v. Hartz Mountain Associates*, 93 N.J. 370, 461 A.2d 568 (1983), instructive. In *Siller*, the Supreme Court of New Jersey addressed the issue of whether a condominium association had exclusive standing to bring certain claims involving the common areas and facilities[6] against a developer. *Siller*, 93 N.J. at 380, 461 A.2d at 573. The plaintiffs, the individual unit owners of the condominium, (1) filed a complaint against the developer of the condominium, alleging defects in the units, common areas and facilities and (2) sought a temporary restraining order against their two condominium associations (collectively, the associations) to prevent the associations from consummating a settlement with the developer that related to the individual unit owners' claims. *Siller*, 93 N.J. at 372-73, 461 A.2d at 569. More specifically, the plaintiffs alleged, *inter alia*, that there had been a settlement offer between the developer and the associations on behalf of the unit owners and that the associations had no authority to settle the claims against the developer. *Siller*, 93 N.J. at 372-74, 461 A.2d at 569-70. The trial court denied the temporary restraining order, dismissed all counts against the developer and allowed the developer and the associations to settle. *Siller*, 93 N.J. at 373, 461 A.2d at 569. The owners appealed, and the appellate court affirmed the trial court's decision. *Siller*, 93 N.J. at 373, 461 A.2d at 569.

The *Siller* court noted that New Jersey's Condominium Act (N.J. Stat. Ann. 46:8B-1 through 46:8B-38 (West 2003)) was an act which recognized the new form of ownership in real property, in which the individual unit owner enjoys a fee simple title and exclusive ownership of his individual unit, while retaining, as a tenant in common, an undivided interest in the common elements. *Siller*, 93 N.J. at 375, 461 A.2d at 570. The *Siller* court further noted that New Jersey's Condominium Act provided, among other things, that the association will administer and manage the condominium, collect funds from unit owners for common expenses, maintain accounting records and "enter into contracts, bring suit and be sued." *Siller*, 93 N.J. at 375-77, 461 A.2d at 572-73. The *Siller* court found that the statutory provisions of New Jersey's Condominium Act conferred standing to the association to institute legal action "on behalf of the unit owners for damages to common elements caused by third persons." *Siller*, 93 N.J. at 378, 461 A.2d at 572. The *Siller* court then considered whether an association may have an *exclusive* right to sue and stated:

---

[6]It is unclear from the court's opinion exactly what claims were brought.

"Obviously the unit owner has an interest in claims against the developer arising out of damages to or defects in the common elements. However, the association has been charged with and delegated the primary responsibility to protect those interests [by New Jersey's Condominium Act, which states that the association shall be responsible for the maintenance, repair and replacement of the common elements]. So long as it carries out those functions and duties, the unit owners may not pursue individual claims for damages to or defects in the common elements predicated upon their tenant in common interest. The Condominium Act contemplates as much. ***

It would be impractical indeed to sanction lawsuits by individual unit owners in which their damages would represent but a fraction of the whole. *** A sensible reading of the statute leads to the conclusion that such causes of action belong exclusively to the association ***.

This is not to say that a unit owner may not act on a common element claim upon the association's failure to do so. In that event the unit owner's claim should be considered derivative in nature and the association must be named as a party. ***

The unit owner may also sue the developer on behalf of the association irrespective of its governing board's willingness to sue during the period of time that the association remains under the control of the developer. ***

The unit owner, of course, does have primary rights to safeguard his interest in the unit he owns. *** Moreover, defective conditions in the common elements may also result in injury to the unit owner and damages to his personal property and the unit. For example, a faulty roof may result in personal property damage in the unit. The unit owner's right to maintain an action for compensation for that loss against the wrongdoer is not extinguished or abridged by the association's exclusive right to seek compensation for damage to the common element." *Siller*, 93 N.J. at 380-82, 461 A.2d at 573-74.

Accordingly, the *Siller* court held that the owners lacked standing to sue the developer for damages based solely on their tenant-in-common interests, but the owners could still, in certain situations, bring their individual claims against the developer. *Siller*, 93 N.J. at 383-84, 461 A.2d at 575.

We also find instructive the Supreme Court of Virginia's opinion in *Frantz v. CBI Fairmac Corp.*, 229 Va. 444, 331 S.E.2d 390 (1985). In *Frantz*, a condominium association and one owner of a unit in the condominium (collectively, the Association) filed a complaint in the trial court against the developer, alleging in count I that the developer had violated certain provisions of the Virginia Condominium Act (Va.

Code Ann. §§ 55—79.39 through 55—79.103 (Michie 2003)) by falsely representing to prospective purchasers that a nearby parcel of land would be improved as a park, and, in count II, alleging that commercial use of the nearby parcel of land would violate restrictive covenants to which the parcel was subject. *Frantz*, 229 Va. at 445-46, 331 S.E.2d at 392. Twenty-seven other individual condominium unit owners filed petitions seeking to intervene as plaintiffs in the lawsuit, alleging that they owned units " 'located either directly across from or in close proximity to' the disputed parcel," that the parties involved in the case did not adequately represent them and that their rights would be prejudiced if they were not allowed to intervene. *Frantz*, 229 Va. at 446, 331 S.E.2d at 392. The trial court granted the petitions to intervene and, subsequently, the Association moved to dismiss its complaint with prejudice because it had consummated a settlement with the developer. *Frantz*, 229 Va. at 446, 331 S.E.2d at 392. The trial court granted the Association's motion to dismiss, ruled that the individual unit owners were bound by the Association's settlement and ordered the case removed from the docket. *Frantz*, 229 Va. at 447-48, 331 S.E.2d at 393.

The individual unit owners appealed, and the *Frantz* court addressed "the authority of a condominium unit owners' association to compromise, over the objection of individual unit owners, a claim against the condominium developer." *Frantz*, 229 Va. at 445, 331 S.E.2d at 392. The individual unit owners conceded that some of their rights were of a collective nature, held in common with other unit owners, and were subject to the control of the unit owners' association, but argued that their right, pursuant to the Virginia Condominium Act, to receive from the developer full, fair and accurate disclosure of the true intended use of the nearby parcel was another separate and individual right which they could assert free from the control of the association. *Frantz*, 229 Va. at 449, 331 S.E.2d at 393-94. In response to this argument, the *Frantz* court stated:

> "We disagree with the intervenors. We believe that the right sought to be asserted in the *** complaint was not of the individual nature the intervenors ascribe to it. While the disputed parcel did not constitute a common element of the condominium, as that term is used in the Condominium Act, the right claimed in the parcel, once established, would have been held in common by all the unit owners.
>
> Having this collective character and stemming from the Condominium Act, the right claimed in the disputed parcel was one the Association had the authority to assert. ***
>
> * * *

We believe also that because a unit owners' association has the authority *** to assert a claim for the violation of a common right, it necessarily has the authority to compromise the claim. ***

We believe further that the intervenors are bound by the compromise reached between the Association and [the developer]. As noted, the compromise involved a claim for the violation of a common, rather than an individual, right. The compromise was reached by the Association in a representative capacity on behalf of all the unit owners pursuant to its express and implied authority. ***

*** 'Realistic and practical application of the statutory scheme requires that the language used in and pursuant to the statute be liberally construed to include [as part of the authority of a unit owners' association] the assertion and settlement of claims on behalf of unit owners against the developer with respect to common elements. To deprive the association of the right to act on behalf of all unit owners in such matters would leave the responsibility for and authority over the common elements fragmented and thus make vindication of the common rights highly uncertain, difficult and burdensome.' [Citation.]" *Frantz*, 229 Va. at 449-52, 331 S.E.2d at 394-95.

Accordingly, the *Frantz* court held that "the trial court did not err in ruling that the Association had authority to assert and compromise the claim set forth in the *** complaint and in ruling that the intervenors were bound by the compromise." *Frantz*, 229 Va. at 452, 331 S.E.2d at 395.

We further find the Supreme Judicial Court of Massachusetts' decision in *Cigal v. Leader Development Corp.*, 408 Mass. 212, 557 N.E.2d 1119 (1990), instructive. In *Cigal*, individual owners of condominium units filed a complaint in the trial court, alleging breach of contract against the developer of the condominium, negligent construction against a subcontractor of the condominium, breach of fiduciary duty against individual board members of the condominium association, and fraud against a previous president of the association's board. *Cigal*, 408 Mass. at 213-14, 557 N.E.2d at 1120. The trial court granted the defendants' motion for summary judgment as to each of the above counts on the basis that the individual unit owners lacked standing to bring the claims. *Cigal*, 408 Mass. at 213, 557 N.E.2d at 1120.

On appeal to the Supreme Judicial Court of Massachusetts,[7] the defendants contended that the plaintiffs lacked standing to bring the

---

[7]The case was transferred to the Supreme Judicial Court on the trial court's own motion.

breach of contract claim because the claim related to the common areas of the condominium. *Cigal*, 408 Mass. at 214, 557 N.E.2d at 1121. The *Cigal* court disagreed, finding that the plaintiffs had alleged that "their units, as well as the common areas, were not constructed in accordance with the contractual specifications [as set forth in their individual purchase and sale agreements]." *Cigal*, 408 Mass. at 215, 557 N.E.2d at 1121. Thus, the *Cigal* court reasoned, the plaintiffs had set forth a claim for breach of contract against the developer. *Cigal*, 408 Mass. at 215, 557 N.E.2d at 1121. The *Cigal* court further stated:

> "Purchase of a condominium unit does not compel a purchaser to relinquish to the condominium association all actions against the developer for failure to deliver what was promised. Nothing in [Massachusetts' condominium statute] divests the purchaser of a condominium unit of the right to sue in breach of contract. Indeed, a breach of contract claim has an 'individual character' and is the sort of action that we have ruled may be brought or settled only by an individual unit owner. [Citation.] *** The injury claimed is not so much in the construction defects themselves, but in the purchaser's nonreceipt of the benefit of her bargain. This contractually based injury is entirely distinct from the torts for which the unit owners' association may recover.
>
> * * *
>
> Accordingly, the [individual unit owners] should be permitted to proceed with count I because it alleges breach of contract for failure to provide what was promised in the purchase agreements. Any claim of damage to an individual unit owner's unit or personal property also survives." *Cigal*, 408 Mass. at 215-17, 557 N.E.2d at 1121-22.

The *Cigal* court then examined count V of the plaintiffs' complaint, which alleged negligent construction against the subcontractor, and noted that this claim was "not governed by contract principles" as the first claim had been. *Cigal*, 408 Mass. at 217, 557 N.E.2d at 1122. The subcontractor argued that the Massachusetts' condominium statute, which provided that the association was empowered to " 'conduct litigation ... as to any course of action involving the common areas,' " gave the association exclusive standing to bring this type of claim. *Cigal*, 408 Mass. at 217, 557 N.E.2d at 1122. Even though there was not a provision in Massachusetts' condominium act that expressly gave condominium associations exclusive standing, the *Cigal* court stated:

> "The statute plainly contemplates that the association is to act as the exclusive representative of the unit owners in litigation for negligent construction. In addition to vesting the association with the power to conduct litigation concerning the common areas, it

provides that '[t]he expenses incurred in and proceeds accruing from the exercise of the ... powers [to conduct litigation] shall be common expenses and common profits.' [Citation.] Piecemeal litigation by individual unit owners would frustrate the statutory scheme, in which the association acts as the representative of all owners in common. Thus, we conclude that in litigation for negligent construction of common areas, the condominium statute requires that the unit owners act by and through the condominium association, which represents all the unit owners. Other jurisdictions that statutorily authorize a condominium association to bring suit in a representative capacity have reached the same conclusion. [Citing *Frantz* and *Siller*.] Accordingly, the [unit owners] may not proceed individually on this theory, except through a derivative suit." *Cigal*, 408 Mass. at 217-18, 557 N.E.2d at 1122-23.

The *Cigal* court therefore held that the individual unit owners had standing to bring a breach of contract claim because that claim was of an "individual character," but lacked standing to bring a claim for negligent construction because the statute contemplated that, with respect to this claim, the unit owners were to act by and through the association. *Cigal*, 408 Mass. at 215, 217-18, 557 N.E.2d at 1121, 1122-23.

■ We find the case at bar procedurally similar to *Siller*, in that plaintiffs here are individual unit owners who opposed the Association's attempt to settle with the developers and who sought temporary restraining orders to prevent any such settlement. Like the condominium unit owners in *Siller*, Poulet here simply has a fee simple title, from which he enjoys exclusive ownership of his individual unit, and retains as a tenant in common an undivided interest in the common areas. Poulet did not assert any individual contract right but rather alleged claims for conversion and common law constructive fraud in connection with the Association's funds. Similar to the plaintiffs' interest in the common areas in *Siller*, we note here that, obviously, Poulet has *some* interest in the claims that relate to the Association's funds. However, the Association here has been charged with, and delegated, the primary responsibility to protect those interests. The Act provides that "common expenses" include any reserves lawfully assessed by the board of managers; "reserves" are the sums that are paid by the unit owners and separately maintained by the board of managers; the Association is responsible for the overall administration of the property and shall exercise all powers necessary to effect the purposes for which it is organized; and the powers and duties of the board of managers include *collecting assessments from unit owners, preparing the property's annual budget, keeping detailed*

*and accurate records of receipts and expenditures affecting the property and maintaining the books and records of the Association's account, including itemized and detailed records of all receipts and expenditures.* 765 ILCS 605/1 through 22 (West 2002). Moreover, the Act provides that the meetings of the board of managers are to be open to any unit owner, except for the portion of any meeting held to discuss litigation when an action is brought against, or on behalf of, the Association. 765 ILCS 605/1 through 22 (West 2002).

Thus, like New Jersey's Act in *Siller*, the Act here charges the Association with the primary responsibility to protect the interests in the Association's funds. Accordingly, like the court in *Siller*, we find that a sensible reading of the Act here, which gives broad powers to the board of managers over an association's funds, leads to the conclusion that causes of action for conversion and common law constructive fraud relating to an association's account belong exclusively to that association.

We further agree with the *Siller* court that allowing lawsuits by individual unit owners in cases such as this would not only be impractical, but would be detrimental to any hope of settlement negotiations between developers and an association and, in turn, would hinder an association from speaking with one voice when dealing with third parties in carrying out its functions provided by the Act. As stated in *Frantz*, we believe that the realistic and practical application of the Act here requires that the language used in section 9.1(b) include, as part of the Association's authority, the assertion and settlement of claims on behalf of the unit owners with respect to certain claims involving more than one unit. To allow the individual unit owners here to assert claims of conversion and common law constructive fraud relating to the Association's account would, as stated by the court in *Frantz*, deprive the Association of its right to act on behalf of all unit owners, leave the responsibility for and authority over the funds fragmented and ultimately make the vindication of common rights highly uncertain, difficult and burdensome. Further, as stated by the court in *Cigal*, piecemeal litigation brought by individual unit owners would frustrate the statutory scheme in which the condominium associations are to act as the representatives of all the individual owners. We also believe that our finding here avoids a multiplicity of lawsuits, produces economic savings incident to one trial, has a positive effect on judicial administration and expedites the resolution of controversies. See *Siller*, 93 N.J. at 379, 461 A.2d at 572-73.

We further disagree with plaintiffs' argument that Poulet's additional allegations, that the funds in the Association's account were

not owned by the Association but, rather, were proportionately owned and contributed by each individual unit owner, conferred to Poulet an individual interest sufficient to provide him with the necessary standing to pursue those claims. As stated in *Frantz*, we believe that the right sought to be asserted here was not of the individual nature the plaintiffs ascribe to it, and that the collective character of the claims at issue here—both involving Association funds—show that the rights were those only the Association had the authority to assert.

In addition, we note that our finding in this case does not bar individual unit owners from obtaining relief in the event that the Association fails to take action against the third parties. In that event, as noted in *Siller*, individual unit owners could protect any interest they have in the Association's funds by bringing a derivative action against the Association.

We also agree with the *Cigal* court that, although individual unit owners may have standing to bring claims that have an "individual character," such as the breach of contract claims at issue in *Cigal* or the breach of warranty claims at issue in *Tassan*, when dealing with the specific claims at issue here, the Act requires that unit owners act by and through their condominium association, and thus gives the association exclusive standing to pursue such claims. Accordingly, we find that Poulet, an individual unit owner here, lacked standing to bring claims of conversion and common law constructive fraud in connection with the Association's funds. In doing so, we expressly limit our finding to the facts of this case and the claims involved herein.

## CONCLUSION

For the reasons stated, we affirm the judgment of the circuit court of Cook County.

Affirmed.

CAHILL and WOLFSON, JJ., concur.