2024 IL App (1st) 230790-U

THIRD DIVISION
January 31, 2024

No. 1-23-0790

**NOTICE**:  This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

---

**IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT**

---

| | |
|---|---|
| BOARD OF DIRECTORS OF EDGEWOOD VALLEY CONDOMINIUM COMMUNITY ASSOCIATION, INC., an Illinois Not-For-Profit Corporation, | ) Appeal from the<br>) Circuit Court of<br>) Cook County<br>) |
| Plaintiff-Appellee, | ) |
| v. | ) No. 2019 CH 11198<br>) |
| CEDOMIR FILIPOV, TOSHE FILIPOV, VANJA VISI, VANCHO VESELINOV and KLEMENTINA ANDONOVA, | ) Honorable<br>) Caroline K. Moreland, |
| Defendants-Appellants. | ) Judge, Presiding. |

JUSTICE D. B. WALKER delivered the judgment of the court.
Presiding Justice Reyes and Justice Van Tine concurred with the judgment.

**ORDER**

¶ 1     *Held*: We affirm the trial court's judgment granting plaintiff's request for permanent injunctive relief where plaintiff had standing to assert its claim and complied with the statute when initiating this litigation.

¶ 2     Defendants Cedomir Filipov, Toshe Filipov, Vanja Visi, Vancho Veselinov and Klementina Andonova appeal the judgment of the trial court granting a permanent injunction in favor of plaintiff, the Board of the Edgewood Valley Community Association ("EVCA Board"),

and ordering defendants to replace their nonconforming doors with conforming sliding doors. On appeal, defendants contend that the trial court erred in its judgment where the EVCA Board 1) did not have standing to bring its claim against defendants, 2) failed to satisfy the statutory requirement that a vote to initiate litigation must take place in a meeting open to all members, and 3) did not conform its pleading to the proofs. Defendants also argue that the trial court should have granted their motion to reconsider. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     Defendants own units in the Edgewood Valley condominium complex located in Countryside, Illinois. The complex consists of the "Community Area," as well as four residential buildings containing the dwelling units (Buildings A, B, C and D). Both Filipov defendants and defendants Visi and Veselinov own units in Building A. Defendant Andonova owns a unit in Building B.

¶ 5     The Edgewood Valley Condominium Community Association (Community Association) is an Illinois not-for-profit corporation. The Community Association acts through its EVCA Board, which consists of an equal representation of delegates from the four residential buildings. Each building also has its own association, declaration, and board of managers.

¶ 6     The Community Association was established on March 13, 1973 by recording the Community Association Declaration (Declaration) in the Office of the Recorder of Deeds of Cook County. The document declared "that the following rights, easements, covenants, restrictions, conditions, burdens, uses, privileges, charges and liens:

       (1) shall and do exist at all times hereafter among all parties having or acquiring any right, title or interest in the Premises which Trustee and Developer hereby subject to this Declaration;

(2) shall be binding upon and inure to the benefit of each Owner ***; and

(3) shall run with the land, and each *** portions [*sic*] of the Premises hereby subjected to this Declaration, shall be held, sold and conveyed subject thereto."

¶ 7 Relevant to this case, section 8.01 of the Declaration, which pertains to the Community Area, states that no "exterior addition to or change or alteration" shall be made "unless and until written plans and specifications *** have been submitted to [the EVCA Board] and approved in writing as to harmony of external design, color and location in relation to surrounding structures and topography." Section 8.02, which applies to "Building Exteriors," provides that:

"Each Building and Condominium Association shall be required, at the sole cost and expense of the Owners of the Dwelling Units therein, to maintain and keep their respective parcels and improvements thereon in good condition and repair. *In no event shall the exterior of any building on the Premises [be] changed in color, materials or otherwise unless such change is approved in writing by the Community Board or the Architectural Control Committee.* If any Condominium Association shall fail to maintain and repair any building exterior, the Community Association, in addition to all other remedies available to it hereunder or by law, and without waiving any of said alternative remedies, shall have the right *** to enter upon the Common Elements of the Condominium Property and to repair, maintain and restore the building exterior and any other improvements thereon. Any sums so spent by the Community Association shall be immediately due and payable *** by the Owner[s] of such building on demand ***." (Emphasis added.)

¶ 8 The declaration of Building A provides that the "Common Elements *** shall include the land, stairways, entrances and exits, elevators, halls, balconies, patios *** and such component parts of walls, floors and ceilings as are not located within the Units." Although the declaration for

Building B is not in the record on appeal, filings by the parties indicate that it contains a similar provision.

¶ 9      The EVCA Board has the authority, pursuant to section 6.02, to "enforce provisions of this Declaration and rules made hereunder and to enjoin and seek damages from any Owner for [a] violation of such provisions or rules." Section 9.02 provides that "[e]nforcement by the Community Association *** of the covenants and restrictions contained in this Declaration shall be had by any proceeding at law or in equity against any person or persons violating or attempting to violate any such covenant or restriction ***."

¶ 10      In 2018, members of the EVCA Board inspected the premises for violations of the Declaration. Specifically, they checked for missing screens in windows and doors, as well as "any type of safety or sanitary type issues that would need to be addressed." Shawn Campbell, one of the EVCA Board members who conducted the inspection, noticed that defendants' units altered the windows and replaced the doors on their balconies without EVCA Board approval. The EVCA Board attempted to discuss the matter with defendants, but the issue remained unresolved.

¶ 11      On July 9, 2019, the EVCA Board held a closed executive meeting with six members in attendance, including Campbell and defendant Veselinov. A written summary of the meeting indicated that the EVCA Board met with lawyer Kat Formeller due to a conflict with its current lawyer, who also represented the association of Building A. Some of the unit owners who had nonconforming windows and doors resided in Building A. At the meeting, the EVCA Board explained that certain owners did not want to follow the rules, and it was concerned that the violations would "tremendously" affect the value of the property. Although the EVCA Board was "not looking to sue anyone," it wanted to ensure that everyone followed the rules. Formeller

assured them that these are common issues for condominium associations, "but with a sturdy hand [they] can be resolved in an amicable manner."

¶ 12    According to the written summary, EVCA Board members asked Veselinov near the end of the meeting to recuse himself since he was one of the owners in violation of the rules. Without Veselinov present, a majority of the members voted to retain Formeller as the new attorney and to "proceed with injunctions." The EVCA Board discussed the specific violations with Formeller and informed her that it wanted to work with Veselinov to resolve the matter amicably, even though he had been uncooperative. Since this issue involved the EVCA Board and Building A, where Veselinov owned his unit, "[n]o one lawyer can represent both entities, thus [the EVCA Board] would need to hire" Formeller as its new attorney.

¶ 13    The EVCA Board scheduled a meeting open to all unit owners for July 15, 2019, when the EVCA Board would "vote on the new lawyer." Defendants Toshe Filipov, Cedomir Filipov, Visi, and Veselinov attended the meeting. According to the written summary, the meeting was "quite unruly, troublesome and disruptive." EVCA Board member Veselinov and his family "were some of the most upset owners as they believe[d] the association want[ed] to sue them." The EVCA Board explained that it was not "trying to sue anyone." However, the EVCA Board was also concerned that the owners' noncompliance with the rules would affect property values. It wanted to ensure that everyone followed the Declaration rules and the bylaws. With three "yes" votes, the EVCA Board voted to retain Formeller as its attorney. Veselinov voted "no."

¶ 14    On August 15, 2019, the EVCA Board, through Formeller, mailed each defendant a letter stating that he or she "altered the exterior of the Building" by installing French doors and removing screens from windows without obtaining consent from the EVCA Board. The letters set forth the pertinent provisions of section 8.01 and gave defendants 30 days from the date of the letter to

comply with the rules. Defendants were warned that if they "fail or refuse to comply with this letter within the time provided herein, [the EVCA Board] will have no choice but to take legal action to enforce the provisions of the Common Ground Declaration pursuant to Article 8.02."

¶ 15    On September 27, 2019, the EVCA Board filed a complaint for injunctive relief against each defendant. The complaint charged defendants with altering the exterior of their buildings by installing French doors without EVCA Board approval. In doing so, defendants disrupted "the uniformity of the doors throughout the Association as all other Units have sliding doors." The EVCA Board asserted that it had "an ascertainable right to protect the property and the rights of property owners and others who reside within the Association and to enforce the covenants uniformly." The complaint referenced language in section 8.01 of the Declaration and requested a "mandatory permanent injunction requiring [each] Defendant to comply with the Declaration and replace the French doors with sliding doors *** within the specified time period, not to exceed sixty (60) days." The complaint also sought attorney fees and costs. The trial court subsequently granted defendants' motion to consolidate their cases.

¶ 16    Defendants moved to dismiss the complaint and raised three affirmative defenses. First, they argued that the EVCA Board had no standing to file this claim. Second, they contended that they did not violate the Declaration. Third, they argued that the EVCA Board failed to vote on this litigation at a meeting open to all unit owners as required by the Illinois Condominium Property Act (Act) (765 ILCS 605/1 *et seq.* (West 2020)).

¶ 17    At trial, Campbell read aloud sections 8.01 and 8.02 of the Declaration. He testified that external uniformity mattered in their community as reflected by these provisions. Campbell stated that when the EVCA Board voted to retain Formeller, they voted to give their new attorney "broad strokes to handle this and all other violations. To handle it to the letter of the law in any way that

they needed to." Campbell testified that the meeting was unruly because "the directors from Building A and Building B were also in receipt of the violations." Every meeting since has been "disruptive, unruly, and just basically outrageous." Campbell stated that the EVCA Board did not vote specifically on whether to file the lawsuits against defendants because "it was not necessary. The original vote granted [Formeller] a broad stroke to handle our legal affairs for us in any way that [she sees] fit."

¶ 18    Toshe Filipov and Veselinov testified for the defense. Both stated that the EVCA Board did not vote to file a claim against them or the other defendants at the July 15, 2019 meeting.

¶ 19    In closing argument, Formeller argued that sections 8.01 and 8.02 of the Declaration clearly indicate that the Declaration governs both the Community areas and the exterior of buildings on the premises. In response, defendants' counsel noted that the EVCA Board only raised section 8.01 in its complaint, and it raised section 8.02 for the first time at trial. Nonetheless, he argued that it was unclear under section 8.02 whether defendants made an improper change to the buildings' exterior. Defendants' counsel further argued that the Act required the EVCA Board to vote on whether to pursue the present action in an open meeting, but it did not do so.

¶ 20    In rebuttal, Formeller argued that "the declaration needs to be read as a whole" and each unit owner is "bound by the entire declaration." Regarding whether the EVCA Board took a proper vote to proceed with the litigation, she argued that the "vote did occur[,] that it was broad authority which included the potential litigation."

¶ 21    In rendering its decision, the trial court stated that the complaints against defendants were based on violations of sections 8.01 and 8.02 of the Declaration. The court noted language in section 8.02, which provided that "[i]n no event shall the exterior of any building on the premises *** change in color, materials, or otherwise." The court found that the intent of the Declaration

"is to maintain uniformity on all of the buildings," and that uniformity "applies to the exterior of the buildings." It also found that the Declaration requires owners to conform their units to the other residential units. The trial court thus determined that defendants violated the Declaration.

¶ 22    The trial court also found that the July 15, 2019 EVCA Board meeting to vote on a new lawyer was "the only meeting regarding the lawsuit." It noted that section 18.5 of the Act (765 ILCS 605/18.5 (West 2020)) required the EVCA Board to vote on any litigation matters at a meeting open to any unit owner. Therefore, the issue before the court was "whether the vote to approve the new legal counsel *** was sufficient to satisfy 18.5." In ruling that the vote complied with the Act, the court found that:

> "The board has the authority to enforce the declarations through lawsuits. The board
> properly held a meeting to vote on hiring an attorney to enforce the violations. There was
> a vote to proceed with injunctions as stated in the meeting minutes. Any further meetings
> to discuss litigation were not required. Thus, the board's decision to file the lawsuit after
> the violation letters [were] sent does not invalidate the lawsuit."

The trial court granted the permanent injunction because "irreparable harm and inadequate remedy at law are created when the nonconformity affects the property values of the units," and "there is a likelihood of success on the merits." The court ordered defendants to replace the doors with conforming doors within 90 days. It also granted the EVCA Board's request for attorney fees.

¶ 23    Defendants filed a motion to reconsider, arguing that the trial court misapplied the Act in finding that the EVCA Board complied with the requirement to hold open meetings when voting on litigation matters. Defendants pointed to the court's ruling, which referenced the written summary of the closed July 9, 2019 executive meeting. At that meeting, the EVCA Board voted to proceed with injunctions. Defendants also argued that the trial court improperly granted the

EVCA Board relief pursuant to section 8.02 when the complaint only sought relief for violations of section 8.01.

¶ 24    In considering the motion, the court acknowledged that it mistakenly referenced an exhibit containing the July 9, 2019 meeting summary but noted that its reasoning pertained to the July 15, 2019 meeting. The court explained that "[a]ny discussion pertaining to proceeding with injunctions was meant to point out that the July 15, 2019 open meeting gave the attorney carte blanche to proceed with representation and that no additional open meeting was required to authorize injunctive actions."

¶ 25    The court stated that it had referenced sections 8.01 and 8.02 in its original ruling to notify the parties that it had considered their arguments regarding both provisions. Reading the Declaration as a whole, the court found that the "intent was to create uniformity and [the EVCA Board] had authority to enforce that intent." Therefore, the court granted the EVCA Board's requested relief. The trial court subsequently denied defendants' motion to reconsider.

¶ 26    Defendants filed this appeal.

¶ 27                                    II. ANALYSIS

¶ 28    Defendants first contend that the EVCA Board's complaint should have been dismissed for lack of standing. They argue that the EVCA Board lacked standing because under section 8.02 of the Declaration, its cause of action was against the associations for Buildings A and B, not against individual unit owners.

¶ 29    The doctrine of standing ensures that only parties with a real interest in the controversy file claims. *Wexler v. Wirtz Corp.*, 211 Ill. 2d 18, 23 (2004). "A standing challenge focuses on the party seeking relief—not on the merits of the controversy—and asks whether that party is entitled to pursue the legal challenge, either in their personal or representative capacity." *In re Estate of*

*Zivin*, 2015 IL App (1st) 150606, ¶ 14. Whether the trial court should have dismissed a complaint for lack of standing is an issue we review *de novo*. *Glisson v. City of Marion*, 188 Ill. 2d 211, 220-21 (1999).

¶ 30    The Act, which governs the affairs of Illinois condominium associations, addresses the EVCA Board's standing to pursue claims. See *Poulet v. H.F.O., L.L.C.*, 353 Ill. App. 3d 82, 90 (2004). Section 9.1(b) states that the "EVCA Board of managers shall have standing and capacity to act in a representative capacity in relation to matters involving the common elements or more than one unit, on behalf of the unit owners, as their interests may appear." 765 ILCS 605/9.1(b) (West 2020). This provision makes clear that "the boards of condominium associations have standing to sue on all matters that affect more than one unit." *Poulet*, 353 Ill. App. 3d at 90.

¶ 31    As the trial court found, sections 8.01 and 8.02 of the Declaration clearly evince an intent to maintain uniformity regarding the exterior of buildings on the premises. The EVCA Board's complaint asserted claims against defendant unit owners for installing nonconforming doors, in violation of the Declaration, so that "the property and the rights of property owners and others who reside within the Association" may be protected. We find that the EVCA Board had standing under the Act to pursue, on behalf of all unit owners, an injunction to enforce defendants' compliance with the Declaration. See *Henderson Square Condominium Association v. LAB Townhomes, LLC*, 2015 IL 118139, ¶ 75.

¶ 32    The EVCA Board also had standing to pursue its claim against defendants under the provisions of the Declaration. Section 6.02(g) provides that the EVCA Board has the authority to "enforce provisions of this Declaration and rules made hereunder and to enjoin and seek damages from any Owner for [a] violation of such provisions or rules." Furthermore, section 9.02 provides that "[e]nforcement by the Community Association *** of the covenants and restrictions contained

in this Declaration shall be had by any proceeding at law or in equity against any person or persons violating or attempting to violate any such covenant or restriction." Although section 8.02 specifies a remedy available to the EVCA Board when unit owners make unapproved changes to the building exterior, the EVCA Board's right to pursue that remedy is "in addition to all other remedies available to it hereunder or by law, and without waiving any of said alternative remedies." Accordingly, we find that the EVCA Board had standing to pursue these claims.

¶ 33    Defendants next contend that the EVCA Board violated section 18.5 of the Act when it failed to vote on whether to initiate the present litigation at a meeting open to all unit owners. The trial court determined that the EVCA Board did not violate the Act because it held an open meeting to vote on hiring attorney Formeller to enforce the violations. It found that the Act did not require "[a]ny further meetings to discuss litigation."

¶ 34    "Condominiums are creatures of statute and, thus, any action taken on behalf of the condominium must be authorized by statute." *Board of Directors of 175 E. Delaware Place Homeowners Association v. Hinojosa*, 287 Ill. App. 3d 886, 889 (1997). When construing a statute, courts must ascertain and give effect to the underlying legislative intent. *Channon v. Westward Management, Inc.*, 2022 IL 128040, ¶ 17. "The most reliable indicator of legislative intent is the statutory language, given its plain and ordinary meaning." *V & T Investment Corporation v. West Columbia Place Condominium Association*, 2018 IL App (1st) 170436, ¶ 22. We review the trial court's interpretation of the Act *de novo*. *Channon*, 2022 IL 128040, ¶ 17.

¶ 35    Section 18.5 of the Act provides, in relevant part, that:

"(4) Meetings of the board of the master association shall be open to any unit owner in a condominium subject to the authority of the board of the master association, except for the portion of any meeting held:

(A) to discuss litigation when an action against or on behalf of the particular master association has been filed and is pending in a court or administrative tribunal, or when the board of the master association finds that such an action is probable or imminent[.]

* * *

*Any vote on these matters shall be taken at a meeting or portion thereof open to any unit owner of a condominium subject to the authority of the master association.*" (Emphasis added.) 765 ILCS 605/18.5(4)(A) (West 2020).

¶ 36    In arguing that the EVCA Board violated this provision, defendants cite *Palm v. 2800 Lake Shore Drive Condominium Association*, 2014 IL App (1st) 111290. In *Palm*, the plaintiff was a unit owner who filed a complaint against the association board alleging that it violated the Act by conducting condominium business in meetings closed to unit owners. *Id.* ¶ 5. The board filed a motion to dismiss the complaint and the plaintiff subsequently filed two amended complaints. After each amended filing, the board moved to dismiss the amended complaints. *Id.* ¶¶ 9, 21.

¶ 37    The plaintiff filed a third amended complaint asserting, in part, that the board acted beyond its legal authority by violating the open meetings requirement of the Act. *Id.* ¶ 19. The board answered the complaint and filed four affirmative defenses and a counterclaim. *Id.* ¶ 23. The counterclaim asserted that the board was entitled to attorney fees and costs because the plaintiff's claims were not made in good faith. *Id.*

¶ 38    The plaintiff filed a motion for "partial declaratory and injunctive summary judgment." *Id.* ¶ 24. He argued, in relevant part, that the board violated the Act by making decisions in closed meetings on whether to commence or defend the instant litigation. *Id.* The trial court issued an order enjoining the board from authorizing or allowing litigation without a board vote in a meeting open to all unit owners. *Id.* ¶ 28.

¶ 39 On appeal, this court affirmed the trial court's judgment. We found that whether to pursue or defend a lawsuit is a question involving the business of the association because such action requires the expenditure of association funds and resources. *Id.* ¶ 87. We determined that although the Act allows the board to *discuss* litigation matters in closed meetings, "it specifically provides that the board must *vote* on any litigation matter at [a] meeting open to all unit owners." (Emphasis added.) *Id.* It was "uncontested that the board never voted on litigation matters, at open meetings or otherwise." *Id.* ¶ 88. We held that the board's failure to conduct an open vote to defend the instant litigation violated the condominium's declaration as well as the Act. *Id.* ¶ 89.

¶ 40 *Palm* is distinguishable from the case at bar where the board in *Palm* never held an open vote on any litigation matters. Here, the EVCA Board held a closed executive meeting on July 9, 2019 to discuss the issue of owners who installed nonconforming French doors without permission of the EVCA Board. At that meeting, the EVCA Board discussed retaining Formeller as new legal counsel to assist in enforcing the condominium rules. The EVCA Board needed a new attorney because its previous attorney also represented the association of Building A, where some of the defendants owned units. The EVCA Board's immediate intent in hiring Formeller was to address the issue of nonconforming doors and to demand defendants' compliance with the rules.

¶ 41 On July 15, 2019, the EVCA Board held an open meeting to vote on whether to hire Formeller as its new attorney. According to Campbell, it was made clear that the vote for Formeller was "to ensure everyone follows the rules" contained in the Declaration. The EVCA Board's vote gave Formeller a "broad stroke to handle our legal affairs for us in any way that [she sees] fit." Although the EVCA Board did not vote specifically on whether to initiate litigation against defendants, those who attended the open meeting understood that Formeller was being retained to demand defendants' compliance regarding their nonconforming doors. They further understood a

complaint could be filed to that end. In fact, four of the defendants attended the July 15 meeting and, as Campbell testified, the meeting was "quite unruly, troublesome and disruptive." Defendant Veselinov and his family "were some of the most upset owners as they believe[d] the association want[ed] to sue them." Veselinov was the only EVCA Board member who voted not to retain Formeller.

¶ 42     The EVCA Board's vote on Formeller as the new EVCA Board attorney was, in essence, a vote on whether the EVCA Board should utilize all means available to enforce the association rules against defendants, including litigation. Otherwise, the EVCA Board would not have needed a new attorney at that time. As such, the EVCA Board voted on "probable or imminent" litigation matters at the open July 15, 2019 meeting. See 765 ILCS 605/18.5(4)(A) (West 2020). We agree with the trial court that the July 15, 2019 meeting satisfied the requirements of section 18.5.

¶ 43     Defendants next contend that the trial court should not have granted judgment in favor of the EVCA Board based on section 8.02 of the Declaration where its complaint referenced only section 8.01. Defendants claim they had no notice regarding a section 8.02 violation. They argue that, in the interests of justice and fairness, the EVCA Board's complaint should be dismissed with prejudice because the EVCA Board raised a new legal theory at trial that did not conform to the pleadings.

¶ 44     First, we disagree that the EVCA Board raised section 8.02 in this matter for the first time at trial. Section 8.02 provides, in relevant part, that "[i]n no event shall the exterior of any building on the Premises be changed in color, materials or otherwise unless such change is approved in writing by the Community EVCA Board or the Architectural Control Committee." EVCA Board attorney Formeller's August 15, 2019 letter stated that each defendant violated the declaration by installing French doors and removing screens from windows without obtaining consent from the

EVCA Board. Defendants were given 30 days from the date of the letter to comply with the rules. The letter further stated that if defendants did not comply with the terms of the letter, " [the EVCA Board] will have no choice but to take legal action to enforce the provisions of the Common Ground Declaration pursuant to Article 8.02." Although the complaint did not specifically cite to section 8.02, it did reference defendants' improper alteration of the exterior of their residential building by installing nonconforming French doors. This reference comports with the language in section 8.02, which is titled "Building Exteriors." Defendants therefore had ample notice that the EVCA Board's claims against them could include a section 8.02 violation.

¶ 45    Moreover, defendants never raised the issue of forfeiture before the trial court. Instead, defendants' counsel argued the applicability of section 8.02 at trial. When Formeller asked Campbell to read section 8.02 aloud and she proceeded to argue thereon, counsel did not object. Although counsel noted in response that the EVCA Board did not specify a section 8.02 violation in its complaint, he proceeded to argue on the merits that it was unclear whether defendants made an unapproved change to the buildings' exterior under that provision. In denying defendants' motion to reconsider, the trial court explained that it referenced both section 8.01 and 8.02 in its original ruling to notify the parties that it had considered their arguments regarding both provisions.

¶ 46    Even if we presume the EVCA Board improperly asserted a section 8.02 violation for the first time at trial, a party who acquiesces in the admission of improper evidence cannot complain that such evidence was prejudicial. *Russo v. Corey Steel Co.*, 2018 IL App (1st) 180467, ¶ 75. "The rule of invited error or acquiescence is a procedural default sometimes described as estoppel." *In re Detention of Swope*, 213 Ill. 2d 210, 217 (2004). As our supreme court explained, "a party's 'active participation in the direction of proceedings * * * goes beyond mere waiver' such that the

- 15 -

traditional exceptions to the waiver rule do not apply." *Id.* at 218 (quoting *People v. Villarreal*, 198 Ill. 2d 209, 227 (2001)). Defendants cannot complain of error to which they consented.

¶ 47 On appeal, defendants do not challenge the trial court's judgment that they violated section 8.02. Since we find that the trial court properly considered defendants' violation of section 8.02, we need not address their argument that section 8.01 applies only to the Community Area and thus cannot be the basis for the trial court's judgment.

¶ 48 We now address defendants' contention that the trial court erred in denying their motion to reconsider. Defendants contend that the trial court misapplied existing law when it ruled in favor of the EVCA Board. As argument, they only assert that the ruling was inconsistent with Illinois law and the Declaration "as outlined in Sections 1 through 4 of this Brief." Since we have found no error regarding the trial court's application of the law to those issues, we affirm the denial of the motion for the reasons already discussed.

¶ 49                                III. CONCLUSION

¶ 50 For the foregoing reasons, we affirm the judgment of the trial court.

¶ 51 Affirmed.