DAVID J. FRANTZ, ET AL.

V.

CBI FAIRMAC CORPORATION

Record No. 820918

Decided June 14, 1985, at Richmond

Present: All the Justices

*Jeffrey W. Knapp (David J. Frantz*, on brief), for appellants.
*Stephen S. Mitchell (John D. Schmidtlein; McKinley, Schmidtlein & Mitchell*, on brief), for appellee.

CARRICO, C.J., delivered the opinion of the Court.

At issue in this appeal is the authority of a condominium unit owners' association to compromise, over the objection of individual unit owners, a claim against the condominium developer. The condominium involved is Fairlington Villages, consisting of 1,703 units, located partly in the City of Alexandria and partly in the County of Arlington.

On June 22, 1979, the Unit Owners Association of Fairlington Villages and Andrea S. Minniear, the owner of a condominium unit (collectively, the Association), filed a bill of complaint in the Circuit Court of the City of Alexandria against CBI Fairmac Corporation (Fairmac), the developer of the condominium project.

Count I of the bill alleged that in the sale of condominium units, Fairmac had violated the "full and accurate disclosure" requirement of Code § 55-79.90[1] by representing to prospective purchasers that a 3.3-acre parcel of land, which appeared to be included in the condominium project, would be improved as a park for use of unit owners when in fact the parcel was not part of the condominium project, was zoned for commercial use, and was intended by Fairmac to be sold for commercial development.

Count II of the bill of complaint alleged that commercial use of the disputed parcel would violate restrictive covenants to which the parcel was subject. With respect to both counts, the bill prayed for a declaratory judgment, a permanent injunction, and damages.

In petitions filed on August 1 and 22, 1979, David J. Frantz and 26 other owners of condominium units (the intervenors) sought leave to intervene as complainants in the suit. The intervenors alleged that they owned units "located either directly across from or in close proximity to" the disputed parcel, that they were not "adequately represented by the parties before the Court," and that "their rights [would] be prejudiced" unless they were allowed to intervene. Over Fairmac's objection, the trial court on August 22, 1979, granted the petitions to intervene and gave the intervenors leave to "assert such claims as they may have against [Fairmac]."

Nothing of substance occurred in the suit until September 29, 1980, when the Association moved to dismiss its bill of complaint with prejudice because it had reached a settlement with Fairmac. On October 6, 1980, the trial court entered an order reciting that the Association and Fairmac "and only these parties have settled between themselves the matters raised in this action" and directing that the claims of the Association be dismissed with prejudice.

On February 18, 1981, Fairmac moved the trial court to reconsider its order of August 22, 1979, which permitted the 27 unit owners to intervene. In the alternative, Fairmac asked the court to dismiss the suit as to all parties on the ground that the intervenors

---

[1] Code § 55-79.90 is part of the Virginia Condominium Act, Code §§ 55-79.39 to -79.103; § 55-79.90 provides in part that "[a] public offering statement [for the sale of condominium units] shall disclose fully and accurately the characteristics of the condominium and the units therein offered and shall make known to prospective purchasers all unusual and material circumstances or features affecting the condominium."

were bound by the Association's settlement with Fairmac and had no independent status to raise the claims asserted in the bill of complaint.

In a letter opinion dated June 4, 1981, the trial court held that the intervenors were bound by the Association's settlement with Fairmac and, therefore, were not entitled to relief under Count I of the bill of complaint, which related to Fairmac's alleged failure to make a full and accurate disclosure. The court held further, however, that the intervenors had standing to question a violation of restrictive covenants, as alleged in Count II of the bill. In an order incorporating its holdings, the court dismissed Count I and retained Count II on the docket for further action. The order stated that the dismissal of Count I was "without prejudice to the right of the intervenors to maintain an action or actions for fraud and misrepresentation, if they be so advised."

On October 28, 1981, the intervenors moved to amend Count I to allege the existence of an "Easement by Estoppel" in their favor "across" the disputed parcel and to add a new count to allege a "Common Law Dedication" of the parcel "to public use as a park and community center." On November 18, 1981, the trial court denied the motion to amend, stating that "the proposed amendments are simply attempts to reassert claims disposed of by [the] prior ruling dismissing Count I."

In a "Final Decree" entered February 24, 1982, the trial court dismissed Count II, relating to the alleged violation of restrictive covenants, and ordered the case removed from the docket. The intervenors have appealed, assigning error only to the trial court's dismissal of Count I and its refusal to permit amendments to the bill of complaint.

The record shows that the parcel in dispute is located across South 31st Street from the condominium in the Arlington County portion of the project. The parcel had been zoned for limited commercial use long before the condominium was developed. Several buildings located on the east end of the parcel were used during development for sales, maintenance, and related activities while the remainder was used as a storage yard for contractors' equipment. The parcel was shown as a "Park" on a plat attached to the public offering statement published by Fairmac in connection with the sale of condominium units. After development of the project, the parcel was cleared of construction debris, improved with the

planting of grass and shrubbery, and used as a park by residents of the project.

Under the terms of the settlement which resulted in the dismissal of Count I of the bill of complaint, Fairmac agreed to pay the Association $275,000 in cash, to grant the Association a scenic and use easement over a strip of land fronting 230 feet on South 31st Street, constituting approximately the middle one-third of the disputed parcel, to pay any real estate taxes on the strip, and to maintain the strip as an unimproved park area for the use of unit owners.

Fairmac also agreed in the settlement to place restrictive covenants on the remainder of the disputed parcel, prescribing permitted uses and architectural styles, and to give the Association first refusal with respect to the sale of all but one portion of the parcel. In return, the Association agreed to dismiss with prejudice the bill of complaint it brought against Fairmac and to release Fairmac from all pending claims.

The record shows further that Fairmac executed and delivered deeds granting the scenic and use easement across the middle portion of the disputed parcel and subjecting the remainder of the land to the agreed upon restrictive covenants. Fairmac represents on brief that it also paid the $275,000 sum stipulated in the settlement agreement.

In ruling that the intervenors were bound by the Association's settlement with Fairmac, the trial court based its decision on Code § 55-79.80, part of the Virginia Condominium Act. Paragraph (b) of the Code section provides in pertinent part:

Except to the extent prohibited by the condominium instruments, and subject to any restrictions and limitations specified therein, the executive organ of the unit owners' association, if any, and if not, then *the unit owners' association itself, shall have the irrevocable power as attorney-in-fact on behalf of all the unit owners* and their successors in title *to* grant easements through the common elements and *accept easements benefiting the condominium or any portion thereof.*

(Emphasis added.) This Code section, the trial court wrote, "clearly . . . authorized [the Association] to accept the easement and deed pursuant to the settlement agreement," thus disentitling

the intervenors "to the relief prayed for in Count I of the Bill of Complaint."

The intervenors concede that in a condominium, a unit owner possesses certain rights of a collective nature which he holds in common with other unit owners and which are subject to the control of the unit owners' association.[2] In addition to these collective rights, however, the intervenors say, a unit owner possesses certain other, separate, and individual rights which are his, and his alone, to assert, free from control of the unit owners' association.

Among these other rights, the intervenors maintain, is the right to receive from the condominium developer full, fair, and accurate disclosure of the true nature of the condominium, as required by Code § 55-79.90. This is the right Fairmac violated in the present case, submit the intervenors, and the violation constitutes a cause of action only they, and not the Association, could assert and compromise.

■ We disagree with the intervenors. We believe that the right sought to be asserted in the bill of complaint was not of the individual nature the intervenors ascribe to it. While the disputed parcel did not constitute a common element of the condominium, as that term is used in the Condominium Act,[3] the right claimed in the parcel, once established, would have been held in common by all the unit owners.

■ Having this collective character and stemming from the Condominium Act, the right claimed in the disputed parcel was one the Association had the authority to assert. This authority is derived from several statutory sources which delineate the functions of a unit owners' association. Code § 55-79.73(a) states that the by-laws of a condominium shall provide for "the self-government of the condominium by an association of all the unit owners." Code § 55-79.79 provides that "all powers and responsibilities, including financial responsibility, with regard to maintenance, repair, renovation, restoration, and replacement of the condominium shall belong . . . to the unit owners' association in the case of the common elements."

---

[2] The intervenors concede, for example, that a unit owners' association may "assert, defend and settle those claims related to the common element[s]."

[3] Code § 55-79.41 defines the term "common elements," to mean "all portions of the condominium other than the units." In this case, the disputed parcel was not a portion of the condominium.

■ Further, Code § 55-79.80, in addition to conferring power, as previously noted, to grant and accept easements, authorizes a unit owners' association to make improvements on common elements and to acquire, hold, convey, and encumber title to real property.[4] And Code § 55-79.53 contains these important provisions:

> The declarant, every unit owner, and all those entitled to occupy a unit shall comply with all lawful provisions of [the Condominium Act] and all provisions of the condominium instruments. *Any lack of such compliance shall be grounds for an action or suit to recover sums due, for damages or injunctive relief, or for any other remedy available at law or in equity, maintainable by the unit owners' association,* or by its executive organ or any managing agent on behalf of such association, or, in any proper case, by one or more aggrieved unit owners on their own behalf or as a class action. [Emphasis added.]

But, the intervenors insist, the foregoing Code section "specifically authorizes aggrieved unit owners to maintain actions on their own behalf for lack of compliance with the Virginia Condominium Act in 'any proper case.'" The intervenors ask, "What more proper case could there be than this one?" The intervenors then answer their own question by saying that they were entitled to full and accurate disclosure of "all the material facts and circumstances pertaining to the condominium," that Fairmac failed to make this disclosure in violation of the Condominium Act, that they own units "in close proximity to [Fairmac's] adjacent commercially zoned tract," and that they will "most directly bear the impact of commercial development." Hence, the intervenors conclude, they are "the real parties in interest."

■ We believe, however, that the phrase, "in any proper case," limits, rather than expands, the instances in which actions or suits are maintainable by unit owners pursuant to the authority of Code § 55-79.53. Hence, while a unit owner may assert a claim

---

[4] A new paragraph of Code § 55-79.80 became effective after the trial court rendered its decision in the present case. Paragraph (b1) provides that a unit owners' association "shall have the irrevocable power as attorney-in-fact on behalf of all the unit owners . . . to assert, through litigation or otherwise, defend against, compromise, adjust, and settle any claims or actions related to common elements." Acts 1981, ch. 146.

under the provisions of the Condominium Act for the violation of some individual right,[5] Code § 55-79.53 contemplates that a violation of a right held in common by all unit owners shall be maintained by a unit owners' association, unless the association fails or refuses to assert the common right.

■ We believe also that because a unit owners' association has the authority under Code § 55-79.53 to assert a claim for the violation of a common right, it necessarily has the authority to compromise the claim. Furthermore, in the present case, Code § 55-79.80, upon which the trial court based its decision, provides additional authority for an association's compromise of a claim involving a violation of a common right. Under that Code section, a unit owners' association has "the irrevocable power as attorney-in-fact on behalf of all the unit owners . . . to . . . accept easements benefiting the condominium or any portion thereof." Necessarily implied from this language is the authority of a unit owners' association, in accepting easements from others, to make reasonable concessions and to surrender doubtful claims by way of compromise.

■ We believe further that the intervenors are bound by the compromise reached between the Association and Fairmac. As noted, the compromise involved a claim for the violation of a common, rather than an individual, right. The compromise was reached by the Association in a representative capacity on behalf of all the unit owners pursuant to its express and implied authority. And, so far as the record reveals, the transaction was free of fraud or collusion; indeed, the intervenors do not even contend there was any overreaching or unfairness involved in the Association's settlement with Fairmac.

■ We conclude with a quotation from a case cited in Fairmac's brief. Although the quotation concerns the common elements of a condominium, it is relevant here because it expresses the compelling reason for collective action through a unit owners' association in the enforcement of any common right:

> Realistic and practical application of the statutory scheme requires that the language used in and pursuant to the statute be liberally construed to include [as part of the authority of a unit owners' association] the assertion and settlement of

---

[5] As Fairmac points out, the trial court's order dismissing Count I specifically reserved the intervenors' right "to maintain an action or actions for fraud and misrepresentation."

claims on behalf of unit owners against the developer with respect to common elements. To deprive the association of the right to act on behalf of all unit owners in such matters would leave the responsibility for and authority over the common elements fragmented and thus make vindication of the common rights highly uncertain, difficult and burdensome.

*Siller* v. *Hartz Mountain Associates*, 184 N.J. Super. 450, 455, 446 A.2d 551, 554 (1981), *aff'd*, 184 N.J. Super. 442, 446 A.2d 547 (1982), *rev'd on other grounds*, 93 N.J. 370, 461 A.2d 568 (1983).

Because we hold the trial court did not err in ruling that the Association had authority to assert and compromise the claim set forth in the bill of complaint and in ruling that the intervenors were bound by the compromise, we need not consider the intervenors' further contention that the court erred in refusing them permission to amend the bill. Accordingly, the judgment of the trial court will be affirmed.

*Affirmed.*