Present: Hassell, C.J., Keenan, Koontz, Kinser, Lemons, and
Agee, JJ., and Russell, S.J.

JOSEPH M. KUZNICKI, ET AL.

v. Record No. 060878 OPINION BY JUSTICE CYNTHIA D. KINSER
                                    January 12, 2007
ROBERT D. MASON, ET AL.

FROM THE CIRCUIT COURT OF MONTGOMERY COUNTY
Ray W. Grubbs, Judge

In this appeal involving a condominium unit's limited
common element, the dispositive issue concerns whether the
owners of the condominium unit had standing to institute
this suit seeking injunctive relief and damages against two
other condominium unit owners for their actions that
allegedly decreased the size of the limited common element.
We conclude that, under Code §§ 55-79.53(A) and –79.80(B),
only a condominium unit owners' association has standing to
sue for claims related to common elements and limited
common elements.

RELEVANT FACTS AND PROCEEDINGS[1]

Joseph M. Kuznicki and Padmaja Polavarapu
(collectively, the Kuznickis), and Robert D. Mason and
Sherril Mason (collectively, the Masons) are owners of
"[c]ondominium units" in a "[c]ondominium" complex, as

---

[1] We recite the facts as presented in a written
statement of facts made a part of the record pursuant to
Rule 5:11(c).

those terms are defined in Code § 55-79.41.  The Masons'
unit is located on the bottom level of a building that
houses multiple condominium units.  The Kuznickis' unit is
situated within the same building, immediately above the
Masons' unit.

The master deed governing the condominium units
designates "yard areas" as limited common elements and
states: "The owner of a Family Unit to which the yard area
attaches shall have the exclusive use of that yard area,
which use shall be to the exclusion of all other co-owners
of all other Family Units."[2]  The dimensions of the
Kuznickis' limited common element are ten feet by ten feet.

When the condominium complex was constructed, cooling
units were installed for the parties' condominium units on
separate concrete slabs located on the ground adjacent to
the building.[3]  The Masons' cooling unit measured 29 inches
by 20 inches, and both it and the Kuznickis' cooling unit
were situated on the Kuznickis' limited common element.
The parties agreed that the Masons have an easement over
the Kuznickis' limited common element with regard to the
placement of and access to their cooling unit.

---

[2] The record in this case contains only two pages of
the master deed.  Thus, we do not know whether the master
deed defines the term "Family Unit."
[3]  As originally constructed, the condominium units had
heating units separate from the cooling units.

In October 2004, the Masons experienced mechanical problems with both their cooling and heating units. Consequently, the Masons replaced their cooling unit with a "heat pump," measuring 42 inches by 30 inches. The heat pump is located on the spot where the original cooling unit was situated. In order to accommodate the larger heat pump, the workmen who installed the heat pump had to cut down shrubbery next to the Masons' cooling unit. The Masons did not discuss with, or seek the approval of, the Kuznickis or the Piedmont Council of Co-Owners (the Council),[4] before installing the heat pump or removing the shrubbery.

At a November 2004 meeting of the Council, the Kuznickis expressed concern about the newly installed heat pump and the fact it was larger than the cooling unit it replaced. The Council retroactively approved the Masons' installation of the heat pump unit, noting that the Masons had satisfied the Council's criteria for approval. The Council did, however, require the Masons to reimburse the Council for the cost of replacing the shrubbery.

The Kuznickis subsequently filed a bill of complaint against the Masons, seeking, among other things, removal of

_____

[4] The Council is apparently the condominium unit owners' association although that fact is not clear from the record.

3

the heat pump from their limited common element and monetary relief.  In defense, the Masons filed a special plea, a motion to dismiss, and a demurrer, asserting, in part, that the Kuznickis lacked standing to bring the suit.  After hearing oral argument from both parties, the circuit court granted the Masons' special plea and motion to dismiss, basing its decision on the holding in Virginia Hot Springs Company v. Lowman, 126 Va. 424, 430, 101 S.E. 326, 328 (1919) (new use of an easement is permissible if it does not place an additional burden on the servient estate).

The Kuznickis filed a motion for rehearing, arguing that an increase in the width of an easement is not permissible.  See Willis v. Magette, 254 Va. 198, 204, 491 S.E.2d 735, 738 (1997).  After hearing additional argument, the circuit court, in a letter opinion, concluded "the newly installed heat pump is the same nature and character as the original cooling unit, serving the same purpose as the original, except adding heat."  The circuit court further concluded "the size of the heat pump does not require a significant appropriation of additional space and has not placed any additional burden upon the limited common element."  The circuit court therefore affirmed its dismissal of the Kuznickis' suit.  The circuit court,

4

however, chose not to rule on the standing issue raised by the Masons. This appeal followed.

ANALYSIS

On appeal, the Kuznickis assign three errors to the circuit court's judgment. The dispositive issue, however, is raised in the Masons' assignment of cross-error. They assert that the circuit court erred by failing to rule "that only the unit owners' association, and not the Kuznickis, had standing to bring the claims asserted in the [bill of complaint]."[5] Relying primarily on the provisions of Code §§ 55-79.53(A) and -79.80(B), the Masons argue that the General Assembly granted exclusive control over common elements, including limited common elements, to unit owners' associations and that the specific language of Code § 55-79.53(A) confers standing only upon unit owners' associations to sue for claims or actions regarding common elements.

The Kuznickis disagree and assert that, because they have the right to the exclusive use of the limited common element, i.e., the yard area, they are asserting a claim for a violation of an individual right as opposed to a right held in common by all unit owners. Additionally,

---

[5] We find no merit in the Kuznickis' argument that the Masons did not preserve the standing issue presented in the assignment of cross-error.

5

they contend the Masons' installation of the heat pump violated their individual right not to have their limited common element altered without their consent as required by Code § 55-79.57(A).[6] Thus, according to the Kuznickis, this is a "proper case" which they, as "aggrieved unit owners," may maintain "on their own behalf" under Code § 55-79.53(A).

"The point of standing is to ensure that the person who asserts a position has a substantial legal right to do so and that his rights will be affected by the disposition of the case." Cupp v. Board of Supervisors of Fairfax County, 227 Va. 580, 589, 318 S.E.2d 407, 411 (1984). With regard to the standing issue before us, we note that the General Assembly, in 1981, amended the Condominium Act, Code §§ 55-79.39 through -79.103 (the Act), to give condominium unit owners' associations "the power to act as attorney-in-fact for the individual unit owners in asserting or defending actions relating to the common elements." Chesapeake House on the Bay, Inc. v. Virginia Nat'l Bank, 231 Va. 440, 442, 344 S.E.2d 913, 915 (1986) (citing Code § 55-79.80(b1) (1981 Acts ch. 146)). Since

---

[6] Although the Kuznickis assert on appeal that the Masons' installation of the heat pump violated the provisions of Code § 55-79.57(A), they alleged in the bill of complaint that the Masons' actions violated Code § 55-79.68.

6

the statutory scheme before that amendment did not grant power to a unit owners' association to maintain an action with regard to common elements, we held in Chesapeake House that the unit owners' association there had no standing to bring an action to recover damages for alleged defects in the construction of the common elements in a condominium project.  Id. at 442, 344 S.E.2d at 915.  In a subsequent case, Rotonda Condominium Unit Owners Association v. Rotonda Associates, 238 Va. 85, 380 S.E.2d 876 (1989), we explained that the effect of the 1981 amendment to the Act was "to transfer irrevocably, by operation of law, [to the unit owners' association] whatever rights of action the individual unit owners might have had" concerning common elements.  Id. at 89, 380 S.E.2d at 879.

The statute at issue in both cases, Code § 55-79.80, addressed the control of common elements by condominium unit owners' associations and, as relevant to the issue of standing, currently states:

> Except to the extent prohibited by the condominium instruments, and subject to any restrictions and limitations specified therein, the executive organ of the unit owners' association, if any, and if not, then the unit owners' association itself, shall have the irrevocable power as attorney-in-fact on behalf of all the unit owners and their successors in title with respect to the common elements, including without limitation the right, in the name of the unit owners' association, . . . (ii)

7

> to assert, through litigation or otherwise,
> defend against, compromise, adjust, and settle
> any claims or actions related to common elements
> . . . .

Code § 55-79.80(B)(emphasis added).[7]

The Kuznickis do not dispute that a unit owners' association has broad powers with regard to common elements. They claim, however, that the provisions of Code § 55-79.80(B) divest an individual unit owner only of standing to bring an action with regard to rights held in common by all unit owners and that a unit owner still has standing to maintain an action concerning an individual right not held in common by all unit owners. In support of their argument, the Kuznickis rely particularly on the provisions of Code § 55-79.53(A), which state:

> The declarant, every unit owner, and all those entitled to occupy a unit shall comply with all lawful provisions of this chapter and all provisions of the condominium instruments. Any lack of such compliance shall be grounds for an action or suit to recover sums due, for damages or injunctive relief, or for any other remedy available at law or in equity, maintainable by the unit owners' association, or by its executive organ or any managing agent on behalf of such association, or, in any proper case, by one or more aggrieved unit owners on their own behalf or as a class action. A unit owners' association shall have standing to sue in its own name for any claims or actions related to the common

---

[7] The language presently designated as subsection B of Code § 55-79.80 has not substantially changed since it became effective on July 1, 1981. See 1981 Acts ch. 146.

8

> elements as provided in subsection B of § 55-79.80.

Code § 55-79.53(A) (emphasis added).[8]

This subsection was the focus of the Court's decision in <u>Frantz v. CBI Fairmac Corporation</u>, 229 Va. 444, 331 S.E.2d 390 (1985). The issue in <u>Frantz</u> was whether a condominium unit owners' association had the authority to compromise a claim against a condominium developer over the objection of individual unit owners. <u>Id.</u> at 445, 331 S.E.2d at 392. Because the right claimed in a particular parcel of real estate, if established, would be held in common by all the unit owners, we concluded that the unit owners' association, and not the individual unit owners, had standing both to assert and compromise the claim. <u>Id.</u> at 449-51, 331 S.E.2d at 394-95. In reaching that conclusion, we explained:

> [T]he phrase, "in any proper case," limits, rather than expands, the instances in which actions or suits are maintainable by unit owners pursuant to the authority of Code § 55-79.53. Hence, while a unit owner may assert a claim under the provisions of the Condominium Act for the violation of some individual right, Code § 55-79.53 contemplates that a violation of a right held in common by all unit owners shall be maintained by a unit owners' association, unless the association fails or refuses to assert the common right.

---

[8] The General Assembly amended Code § 55-79.53(A) in 1993 to add the last sentence in the quoted portion of subsection (A). 1993 Acts ch. 667.

9

Id. at 450-51, 331 S.E.2d at 395 (footnote omitted).

The Kuznickis use this explanation to argue they have standing to bring this suit against the Masons because their claim for violation of their limited common element, which they characterize as an individual right, falls within the meaning of the phrase "in any proper case." The Kuznickis' argument assumes that the standing given to a condominium unit owners' association by the General Assembly to bring in its own name actions related to common elements does not include actions concerning limited common elements. This assumption, which is the foundation of their entire argument, is flawed for several reasons.

First, the Kuznickis' position is inconsistent with the Act's definitions of certain terms. The Act defines the term "[u]nit" as "a portion of the condominium designed and intended for individual ownership and use," and the term "[c]ommon elements" as "all portions of the condominium other than the units." Code § 55-79.41. More importantly, the Act defines the term "[l]imited common element" as "a <u>portion of the common elements</u> reserved for the exclusive use of those entitled to the use of one or more, but less than all, of the units." Id. (emphasis added).

10

Next, the section of the master deed dealing with limited common elements states that "[t]he owner of a Family Unit to which the yard area attaches shall have exclusive use of that yard area, which shall be to the exclusion of all other co-owners of all other Family Units." (Emphasis added.) While this language gives the Kuznickis exclusive use of the yard area at issue, it is apparent from the actions of the parties in this case that the Council retained certain control over the area designated as the Kuznickis' limited common element. The Kuznickis first expressed their concerns about the installation of the heat pump to the Council. The Masons sought and obtained, albeit retroactively, the Council's approval for installing the heat pump. Indeed, the Council noted that the Masons had satisfied the criteria for approval.[9] Additionally, the Council required the Masons to reimburse it for replacing the shrubbery that was removed incident to the installation of the heat pump.

Finally, our decision in Mozley v. Prestwould Board of Directors, 264 Va. 549, 570 S.E.2d 817 (2002), demonstrates

---

[9] As already noted, the record in this case contains only part of the master deed. Therefore, we do not know the type or extent of control retained by the Council over the limited common elements. Nor do we know the Council's criteria for installing a heat pump in the place of a cooling unit.

11

that the standing afforded a condominium unit owners'
association to sue for claims or actions relating to common
elements does, indeed, pertain to claims or actions
concerning limited common elements. Id. at 555, 570
S.E.2d at 821. There, we decided a condominium unit
owners' association was entitled to an award of attorney
fees as a prevailing party in a declaratory judgment suit
brought by an individual unit owner to determine the
validity of an assessment for replacing certain windows
that the unit owners' association contended were limited
common elements. Id. at 557, 570 S.E.2d at 822. To answer
the unit owner's argument that the suit was not the type of
litigation for which Code § 55-79.53(A) allowed an award of
attorney fees to the prevailing party, we discussed the two
types of litigation authorized by that subsection. The
first type pertains to "actions for failure to comply with
provisions contained in relevant condominium instruments or
in the Act." Id. at 555, 570 S.E.2d at 821. A unit
owners' association, its executive organ or managing agent,
or "aggrieved unit owners on their own behalf or as a class
action" may bring such actions for noncompliance. Id.

The second type of litigation concerns actions related
to common elements. Id. With regard to the second type of
litigation, Code § 55-79.53(A) specifically states, "A unit

12

owners' association shall have standing to sue in its own name for any claims or actions related to the common elements as provided in subsection B of § 55-79.80." (Emphasis added.)  As already discussed, Code § 55-79.80(B) irrevocably gives a unit owners' association the right to "assert, through litigation or otherwise, defend against, compromise, adjust, and settle any claims or actions related to common elements."  Rotonda, 238 Va. at 88, 380 S.E.2d at 878.

We then held in Mozley that the action at issue did not fall within the first type of litigation because the unit owner did not fail to comply with any provision of relevant condominium instruments or the Act.  264 Va. at 555, 570 S.E.2d at 821.  We concluded, however, that the declaratory judgment suit brought by the unit owner and the cross-bill filed by the unit owners' association were "representative of [the] second type of litigation authorized by Code § 55-79.53(A)."  Id.  We explained:

> The [unit owner's association] was required to defend against [the unit owner's] bill of complaint seeking a declaration that the replacement windows were not "limited common elements" as defined by the Act.  The . . . cross-bill was a separate assertion by the [unit owners' association], through litigation, of its claim that those windows were, in fact, "limited common elements."

13

Id. at 555-56, 570 S.E.2d at 881. Implicit in our decision was the recognition that the standing given to a condominium unit owners' association to bring actions related to common elements necessarily includes actions concerning limited common elements. Otherwise, the unit owners' association in Mozley would not have been entitled to an award of attorneys' fees because the litigation there involved limited common elements.

In light of the language of Code §§ 55-79.53(A) and –79.80(B) and our decision in Mozley, we emphasize two points. First, the provisions of Code § 55-79.53(A) give standing to a unit owner to assert "in any proper case" only claims arising from lack of compliance with the Act or relevant condominium instruments. Second, standing to institute claims or actions concerning common elements, including limited common elements, is restricted to condominium unit owners' associations.

Thus, we conclude that the Kuznickis did not have standing to bring the present suit for injunctive relief and damages for the Masons' installation of their heat pump on the spot where their cooling unit was previously located. Any claim the Kuznickis may have lies against the Council with regard to its approval of the Masons' installation of the heat pump. Standing to raise a claim

14

about the limited common element vis-à-vis the installation of the heat pump rests with the Council.

CONCLUSION

For these reasons, we hold that the circuit court erred by failing to address the standing issue asserted by the Masons. We nevertheless conclude the circuit court properly dismissed the Kuznickis' bill of complaint and will therefore affirm the judgment of the circuit court.[10] See State Farm Mut. Auto. Ins. Co. v. Seay, 236 Va. 275, 280 n.3, 373 S.E.2d 910, 913 n.3 (1988).

Affirmed.

---

[10] Because the issue of standing is dispositive, we will not address the Kuznickis' assignments of error.

15