# CIRCUIT COURT OF THE CITY OF HOPEWELL

Edna M. Millisor
and James R. Millisor,
jointly,
and Edna M. Millisor,
individually

v.

Anchor Point
Ventures, L.L.C., et al.

November 7, 2008

Case No. CL08-114

BY JUDGE W. ALLAN SHARRETT

This matter comes before the Court on a Complaint filed March 4, 2008, by Edna M. Millisor and James R. Millisor, jointly (collectively, "Plaintiffs"), and Mrs. Millisor, individually, and the subsequent Demurrers filed by each of the nine Defendants. Defendants Anchor Point Ventures, L.L.C. ("Anchor Point"), Ayers & Stolte, P.C. ("Ayers & Stolte"), Charles E. Ayers, Jr. ("Ayers"), Jesse L. Barber ("Barber"), Villani Real Estate ("VRE"), and Anthony J. Villani, Jr. ("Villani, Jr.") collectively demurred on April 24, 2008. Defendants Ralph L. Costen, Jr. ("Costen"), John H. Woodfin ("Woodfin"), and The Beacon Condominium Association ("the Association") also collectively demurred on April 24, 2008. The Court held a hearing on the

Demurrers on August 22, 2008, and, thereafter, received memoranda from all parties in support or in opposition to the demurrers. Having considered all the pleadings and the argument at the hearing, the Court now rules on the various demurrers.

## I. *Standard of Review*

"A demurrer tests only the legal sufficiency of the claims stated in the pleading challenged." *Thompson v. Skate Am.*, 261 Va. 121, 128, 540 S.E.2d 123, 126-27 (2001). A demurrer "admits the truth of all material facts that are properly pleaded, facts which are impliedly alleged, and facts which may be fairly and justly inferred." *Id*. Thus, the sole question before the trial court "is whether the facts thus pleaded, implied, and fairly and justly inferred are legally sufficient to state a cause of action against the defendant." *Id*. at 128, 540 S.E.2d at 126-27. Therefore, the facts below are as alleged by Plaintiffs in their Complaint.

## II. *Summary of the Facts*

Anchor Point, a Virginia limited liability company, created the Anchor Point Condominiums ("the Condominiums") on April 10, 2001, by recording the proper condominium instruments. Anchor Point is named as the Declarant, as defined by the Condominium Act, Va. Code §§ 55-79.39 *et seq.* (2007) ("the Act"). Ayers and Barber served and continue to serve as co-managers of Anchor Point. The first condominium units at the Condominiums were conveyed on or about May 10, 2001. The Condominiums are still under the period of declarant control, pursuant to Va. Code § 55-79.74 (2007 & Supp. 2008), meaning that Anchor Point still controls them and has not transferred control to the unit owners' association, which is the Beacon Condominium Association in this case.

Due to the Condominiums having been built improperly, the buildings suffered from water intrusion from multiple sources, causing excessive mold growths, high humidity, and water condensation in and between the exterior installation and finish system. Defendants knew of the extensive water intrusion and construction defects through a report issued by an engineering firm in 2006. This report specifically named Plaintiffs' unit, Unit 705, as a unit suffering from chronic water leakage. All of these water problems resulted in widespread mold, which produces volatile organic compounds and causes adverse human health effects.

On May 10, 2006, a group of unit owners filed a class action suit against Anchor Point, Ayers, Barber, and the Association. Anchor Point, Ayers, and the Association were served on March 30, 2007, and Barber was served on April 11, 2007.

On February 28, 2007, Plaintiffs made their first visit to the Condominiums with their realtor, Villani, Jr., founder and principal broker of VRE. Plaintiffs told him that they had heard of newspaper reports about problems at the Condominiums, including rumors of a lawsuit. Villani, Jr., assured Plaintiffs that there were no lawsuits and that all leaks and problems with the building had been remedied, leaving the building in great shape.

On March 20, 2007, Plaintiffs put down a deposit to hold Unit 705, a unit previously used as a model, and signed the sales contract. At this time, Villani, Jr., told Plaintiffs that there was a small active water leak in the bedroom ceiling, but that Anchor Point would make sure it was repaired. Plaintiffs then inquired again as to the general building condition. Villani, Jr., again assured Plaintiffs that repairs would be completed and that there was no pending legal action.

On June 14, 2007, Plaintiffs discovered that the active water leak in the bedroom still was not repaired. They sent an e-mail to ask if other units were also leaking and made an appointment to visit their unit on June 15, 2007. During their visit, Plaintiffs again asked Villani, Jr., whether the problems with the leaking roof had been resolved, to which he responded that everything was fixed and there were no lawsuits.

On June 16, 2007, Villani, Jr., sent an e-mail to Plaintiffs, telling them that he had informed them months ago that a dispute existed between a group of disgruntled unit owners and Anchor Point concerning the water infiltration and mold issue. Subsequently, pursuant to Villani, Jr.'s suggestion, Plaintiffs contacted Ayers to obtain more information on the lawsuit. Ayers told them there was no class action suit and that the building had been totally redone and repaired. In light of this and other conversations, Plaintiffs closed on their unit on or about September 4, 2007. In the meantime though, on August 28, 2007, Ayers and Anchor Point filed their answers to the class action suit that had been served on them on March 30, 2007.

Upon moving in sometime between late August and early September 2007, Plaintiffs initially experienced minor physical symptoms, such as coughing; however, on September 19, 2007, Mrs. Millisor was in the emergency room in respiratory distress. She was given oxygen and returned home. Prior to this instance, she had no history of allergies.

On or about September 27, 2007, an industrial hygienist filed a report on behalf of the class action complainants in the pending lawsuit. His report stated that serious mold and moisture problems existed at Anchor Point, needing immediate mold and moisture remediation.

Mrs. Millisor continued to have health problems while living in their unit, as did Mr. Millisor who had a lingering cough. On or about October 14, 2007, and October 17, 2007, Mrs. Millisor experienced serious respiratory distress, and on October 17, 2007, again went to the emergency room. She was given oxygen and returned home.

Generally, upon returning to Unit 705, Mrs. Millisor experienced extreme fatigue and weakness, accompanied by respiratory distress. She noted that, whenever she went outside the unit, her conditions improved. She concluded that something inside the unit was making her ill, and Plaintiffs complained to Villani, Jr., on October 25, 2007.

On or about November 1, 2007, Charlie Martin, an agent of Woodfin Oil Company, sampled the air in the unit. On or about November 2, 2007, Martin notified Plaintiffs that the air sampling had found elevated levels of carbon monoxide. On November 3, 2007, Martin notified Plaintiffs that their unit contained dangerous levels of aerial chemical pollutants and instructed them to stay out of their unit. On November 8, 2007, Mrs. Millisor learned that the carbon monoxide levels in her blood were five times higher than normal, predicting potential carbon monoxide poisoning. On November 10, 2007, Mrs. Millisor again went to the hospital with symptoms of respiratory distress. Plaintiffs' doctor instructed them to move out of the unit.

Meanwhile, on November 2, 2007, unbeknownst to Plaintiffs, Anchor Point and Ayers were served with a motion for injunctive relief in the class action suit. Attached to that motion were the 2006 engineering firm report and the 2007 industrial hygienist report, previously mentioned. On November 9, 2007, at the injunctive hearing on the class action suit, this Court ordered Anchor Point, Ayers, and other defendants to make repairs to the Condominiums.

On or about February 22, 2008, at Plaintiffs' request, McKee Environmental began its investigation of Plaintiffs' unit and found mold contamination on the first day – the same day that this Court found Anchor Point, Ayers, and Barber in contempt for failing to complete repairs ordered by the November 9, 2007, injunction hearing.

Plaintiffs are unable to live in their unit. They have attempted to mitigate their damage by seeking to sell it, but realtors advise them that a sale cannot be completed without a fair disclosure of the existing dangerous conditions and, upon such disclosure, no one would purchase the unit.

III. *Discussion*

A. *Initial General Rulings*

1. *Standing to Sue as Aggrieved Unit Owners*

Initially, the Court must deal with the question of standing. There are two issues with respect to standing in this case. First, Plaintiffs are unit owners and, as such, are limited in their ability to bring an action against the declarant, Anchor Point. Generally, a lack of compliance with the Condominium Act and/or provisions of the condominium instruments by the declarant is "grounds for an action or suit to recover sums due, for damages or injunctive relief, or for any other remedy available at law or in equity, *maintainable by the unit owners' association*, or by its executive organ or any managing agent on behalf of such association. . . ." Va. Code § 55-79.53(A) (2007) (emphasis added). However, "*in any proper case* . . . one or more aggrieved unit owners [may sue] on their own behalf. . . ." *Id.* (emphasis added).

The question then becomes whether this particular case qualifies as a "proper case" under § 55-79.53(A). The Supreme Court of Virginia interpreted the phrase "in any proper case" as follows:

> [T]he phrase, "in any proper case," limits, rather than expands, the instance in which actions or suits are maintainable by unit owners pursuant to the authority of *Code § 55.79-53*. Hence, while a unit owner may assert a claim under the provisions of the Condominium Act for the violation of some individual right, *Code § 55.79-53* contemplates that a violation of a right held in common by all unit owners shall be maintained by a unit owners' association, unless the association fails or refuses to assert the common right.

*Frantz v. CBI Fairmac Corp.*, 229 Va. 444, 450-51, 331 S.E.2d 390, 395 (1985), *quoted in Kuznicki v. Mason*, 273 Va. 166, 173, 639 S.E.2d 308, 311 (2007).

Therefore, there are two ways that unit owners are able to sue for noncompliance with the Act and/or the condominium instruments: (1) where the claim is based on the violation of some *individual right*; or (2) where the claim is (i) based on the violation of a right *common* to all unit owners, *and* (ii) the unit owners' association fails or refuses to assert the common right.

The instant case falls into the first category. Plaintiffs' claims are based on the violation of an individual right, that is, the right to compliance with the Act and the condominium instruments by the declarant vis-à-vis Plaintiffs' unit and their ability to live in that unit. Thus, this case is a "proper case" for the unit owners to bring the action under § 55-79.53(A). *Frantz*, 229 Va. 444, 331 S.E.2d 390 (The Court held that the case was not a "proper case" under § 55.79-53(A) for the unit owners to sue because the right that was allegedly violated was a common right, not an individual right, and the unit owners' association had not failed or refused to sue. The alleged violation was failure to disclose that a parcel of land adjacent to the condominium was not part of the condominium project, was zoned for commercial development, and was intended to be sold by the developer for commercial development. The Court reasoned that the right was common to all of the unit owners as they all were aggrieved by the commercial use of the adjacent tract.)

### 2. *Standing to Bring Claims Relating to Common Elements*

The second issue with respect to standing is Plaintiffs', as unit owners, limited ability to bring an action relating to the common elements of the Condominiums. The Supreme Court of Virginia clearly states that "standing to institute claims or actions concerning common elements, including limited common elements, is restricted to condominium unit owners' associations." *Kuznicki v. Mason*, 273 Va. 166, 176, 639 S.E.2d 308, 312 (2007). The Court based its conclusion in part on Va. Code § 55-79.80(B), which reads as follows:

> [T]he executive organ of the unit owners' association, if any, and if not, then the unit owners' association itself, shall have the irrevocable power as attorney-in-fact on behalf of all the unit owners . . . *with respect to the common elements*, including without limitation the right, in the name of the unit owners' association . . . to assert, through litigation or otherwise, defend against, compromise, adjust, and settle any claims or actions related to common elements, other than claims against or actions involving the declarant during any period of declarant control reserved pursuant to subsection A of § 55-79.74. . . .

Va. Code § 55-79.80(B) (2007) (emphasis added).

However, in quoting § 55-79.80(B), the Supreme Court stopped short of finishing the text of the statute, omitting the phrase after the final comma above: "other than claims against or actions involving the declarant during any

period of declarant control. . . ." *Id.* The *Kuznicki* opinion does not mention whether the condominium was still under the period of declarant control; but, the omission of the statutory language implies that it was not.

The fact that the condominiums in the instant case are alleged to be still under declarant control is significant. The last clause of § 55-79.80(B) as cited above effectively states that the unit owners' association cannot sue the declarant with respect to issues surrounding the common elements while the condominium is under the period of declarant control; therefore, *Kuznicki* is inapplicable to the instant case and the text of § 55-79.80(B) controls. Otherwise, unit owners would have no way to ensure that the Act and the condominium instruments are not being violated with respect to the common elements. To the limited extent Plaintiffs claims may involve the common elements, they have standing to assert them, in addition, of course, to any claims involving their unit.

3. *Plaintiffs' Ability to Sue Ayers and Barber in Their Individual Capacities*

Another issue common to all demurrers is Plaintiffs' right to sue Ayers and Barber in their individual capacities, as they have done in each of the six counts. Ayers and Barber both demur on the grounds that Plaintiffs have not stated a claim for individual liability.

These Defendants assert that any tort claims should be brought against the declarant, not against individuals: "An action for tort alleging a wrong done (i) by any agent or employee of the declarant . . . or (ii) in connection with the condition of any portion of the condominium which the declarant . . . has the responsibility to maintain, *shall be brought against the declarant. . . .*" Va. Code § 55-79.80:1(A) (2007) (emphasis added).

However, Plaintiffs allege that Ayers and Barber are subject to fiduciary liability. These Defendants are both co-managers of Anchor Point, according to the facts as alleged in the Complaint. Plaintiffs allege that Ayers and Barber are persons selected by the declarant to exercise the powers and responsibilities typically assigned to the unit owners' association during the period of declarant control, and as such are subject to fiduciary liability under the Condominium Act:

> The condominium instruments may authorize the declarant, or a managing agent or some other person or persons selected or to be selected by the declarant . . . to exercise powers and responsibilities otherwise assigned by the condominium

instruments and by this chapter to the unit owners' association, the officers, or the executive organ. The declarant or the managing agent or such other person or persons selected by the declarant to . . . exercise such powers and responsibilities otherwise assigned to the unit owners' association, the officers, or the executive organ *shall be subject to liability as fiduciaries of the unit owners for their actions or omissions during the period of declarant control.* . . .

Va. Code § 55-79.74(A) (2007 & Supp. 2008) (emphasis added).

Subsection H provides that "[t]his section shall be strictly construed to protect the rights of the unit owners." *Id.* at (H).

In addition to the theory of fiduciary liability, Plaintiffs allege that Ayers and Barber may be liable based on a theory of piercing the corporate veil. "The independent legal existence of a corporation is a basic component of corporate law. . . ." *O'Hazza v. Executive Credit Corp.*, 246 Va. 111, 115, 431 S.E.2d 318, 320 (1993) (citing *Cheatle v. Rudd's Swimming Pool Supply Co.*, 234 Va. 207, 360 S.E.2d 828 (1987)).

There is no single rule or criterion that can be applied to determine whether piercing the corporate veil is justified. . . . [H]owever . . . one who seeks to disregard the corporate entity must show that the shareholder sought to be held personally liable has controlled or used the corporation to evade a personal obligation, to perpetrate fraud or a crime, to commit an injustice, or to gain an unfair advantage.

*Id.* (citing *Lewis Trucking Corp. v. Commonwealth*, 207 Va. 23, 31, 147 S.E.2d 747, 753 (1966)).

Most significantly, each case "requires examination of the particular factual circumstances surrounding the corporation and the acts in question." *Id.*, 431 S.E.2d at 322.

In this case, Plaintiffs allege sufficient facts to permit claims for individual liability to stand based on a theory of piercing the corporate veil. Ayers and Barber participated in a joint scheme to advertise, develop, and sell units at the Condominiums to buyers such as Plaintiffs. They knew, or should have known, that serious environmental problems existed at the Condominiums and misrepresented the Condominiums' conditions to Plaintiffs. Therefore, Plaintiffs have alleged, at a minimum, three possible ways to hold Ayers and Barber personally liable: for controlling or using

Anchor Point (1) to perpetrate a fraud or a crime, (2) to commit an injustice, and (3) to gain an unfair advantage. *See id.* Whether the facts will bear this out is another issue; however, the demurrer stage is too early to evaluate a claim grounded in part on a theory of piercing the corporate veil.

The Court takes notice of certain applicable provisions of the Virginia Limited Liability Company Act, Va. Code §§ 13.1-1000 *et seq.* (2006):

> [N]o member, manager, organizer, or other agent of a limited liability company shall have any personal obligation for any liabilities of a limited liability company, whether such liabilities arise in contract, tort, or otherwise, *solely* by reason of being a member, manager, organizer, or agent of a limited liability company.

Va. Code § 13.1-1019 (2006) (emphasis added).

> A member of a limited liability company, *solely* by reason of being a member, is not a proper party to a proceeding by or against a limited liability company, except where (i) the object is to enforce a member's right against or liability to the limited liability company or (ii) as provided in Article 8 (§ 13.1-1042 et seq.) of this chapter.

*Id.* at 13.1-1020 (2006 & Supp. 2007) (emphasis added) (The exceptions in subsections (i) and (ii) are inapplicable to this case.)

While these statutes generally provide limited liability to members of a limited liability company, they are not without exception. Plaintiffs' theories of individual liability, *i.e.* fiduciary liability and piercing the corporate veil, prevent Ayers and Barber from being able to hide behind the limited liability afforded them by the Limited Liability Company Act, at least at this stage of the case.

At the demurrer stage, allegations are sufficient to support possible theories of individual liability and to permit Plaintiffs' claims against Ayers and Barber individually to stand. *See 313 Freemason v. Freemason Assocs., Inc.*, 59 Va. Cir. 407, 410-11, 414 (City of Norfolk, 2002); *Board of Dirs. of the Port Royal Condo. Unit Owners' Ass'n v. Crossland Savings, FSB*, 15 Va. Cir. 239, 244 (City of Alexandria, 1989).

### 4. *The Association's Demurrer and Its Status as a Necessary Party*

The Association demurs on the ground that there is no cause of action pleaded against it. The Court notes that, according to the Complaint, the Association is a named Defendant in Count IV. (Compl. ¶ 108.) Plaintiffs state in their Supplemental Memorandum in Opposition to Defendants' Demurrers that they "did not file any cause of action against the Condominium Association . . . [and] do not allege anything against the Association. . . ." (Supp. Mem. in Opp'n to Defs.' Dems. 2.) Plaintiffs state elsewhere in their complaint and maintain in their memoranda that the Association "is named as a necessary party to this litigation, as the Plaintiffs are bound upon their purchase of the condominium to pay Association fees. Plaintiffs seek recovery of these fees, which continue to be paid, as they cannot use the facilities or services provided by the Association." (Compl. ¶ 11.)

This is an insufficient reason to name the Association as a party as Plaintiffs may still seek to recover these amounts through damages assessed against other Defendants. The Association is not a necessary party and as such is dismissed. Thus, its demurrer is sustained with leave to amend granted to Plaintiffs, should they be so advised.

### 5. *Ayers & Stolte's Demurrer and Its Status as a Necessary Party*

Ayers & Stolte demur on the ground that there is no cause of action stated against it. Plaintiffs state in their complaint that "No direct claims are asserted against Ayers & Stolte, but they are named and served as a necessary party in the event Charles E. Ayers, Jr., claims only to be an agent of Ayers & Stolte, P.C." (Compl. ¶ 5.) For this reason, Ayers & Stolte's demurrer is overruled.

Having addressed all of the general issues, the Court now addresses the demurrers to the individual counts.

### B. *Count I: Breach of Warranty*

Plaintiffs claim breach of warranty in violation of Va. Code § 55-79.79 against Anchor Point, Ayers, and Barber, and all Defendants demur. Such a violation would be not in compliance with the Act, thus giving Plaintiffs the right to sue pursuant to § 55-79.53(A). *See supra*, Part III.A.1.

Section 55-79.79 provides two types of warranties. The first type is a warranty against structural defects in the unit and the common elements: "[T]he declarant shall warrant or guarantee, against structural defects, each of

the units for two years from the date each is conveyed, and all of the common elements for two years." Va. Code § 55-79.79(B) (2007 & Supp. 2008). The second type is a warranty that each unit is fit for habitation and constructed in a workmanlike manner: "In the case of each unit, the declarant shall also warrant that the unit is fit for habitation and constructed in a workmanlike manner so as to pass without objection in the trade." *Id.*

Plaintiffs allege a violation of both warranties with respect to their unit. They state that their unit was not fit for habitation, nor was it free from structural defects, as it contained water leaks, mold growths, excessive levels of carbon monoxide, and dangerous levels of volatile organic compounds, all of which made them sick and forced them to abandon their unit. Plaintiffs allege that all of this happened during the warranty period.

Defendants demur on the grounds that Plaintiffs do not have standing, have failed to state any claim for individual liability, and have not alleged that the notice requirement set forth in Va. Code § 55-79.79(C) has been met. The Court already ruled on the standing and individual liability issues. *See supra,* Part III.A.1-3. With respect to the notice requirement, since the time Defendants filed their demurrer, the Court granted a motion craving oyer by the Plaintiffs to attach their notice to the Complaint. Thus, there is no longer a problem of improper notice. The facts as pleaded are sufficient to state a cause of action. For all of these reasons, the demurrers are overruled.

## C. *Count II: Fraudulent Nondisclosure and Concealment*

Plaintiffs claim fraudulent nondisclosure and concealment of the true condition of the condominium in violation of Va. Code § 55-79.90 against Anchor Point, Ayers, and Barber, and all Defendants demur. Such a violation would not be in compliance with the Act, thus giving Plaintiffs the right to sue pursuant to § 55-79.53(A). *See supra,* Part III.A.1.

Section 55-79.90 provides the following: "A public offering statement shall disclose fully and accurately the characteristics of the condominium and the units therein offered and shall make known to prospective purchasers all unusual and material circumstances or features affecting the condominium." Va. Code § 55-79.90(A) (2007).

Plaintiffs allege that these Defendants did not disclose and concealed unusual and material circumstances or features affecting the units, particularly mold and water intrusion. As a result of that nondisclosure and concealment and in reliance thereon, Plaintiffs purchased their unit and incurred property damage and personal injuries.

Defendants demur on the grounds that Plaintiffs do not have standing and have failed to state any claim for individual liability. Having already ruled on both of these issues, *see supra*, Part III.A.1-3, and finding that Plaintiffs have pleaded facts sufficient to state a cause of action for fraudulent nondisclosure and concealment, the Court overrules the demurrers.

## D. *Count III: Negligence Per Se and Negligent Repair*

Plaintiffs claim negligence *per se* and negligent repair against Anchor Point, Ayers, and Barber, and all Defendants demur. The allegations are that these Defendants violated building codes and did not repair Plaintiffs' unit in a workmanlike manner, which rendered the unit unfit and uninhabitable. Plaintiffs claim that this is in violation of the Act and of the condominium instruments, thus giving Plaintiffs the right to sue pursuant to § 55-79.53(A). *See supra*, Part III.A.1. Plaintiffs allege that these Defendants had a duty to comply with all building codes, to undertake any required repairs in a workmanlike manner acceptable in the trade, to leave Plaintiffs' unit in a fit and habitable condition, and otherwise to use ordinary care under the circumstances. Plaintiffs claim that these Defendants violated numerous building codes which prohibit construction practices and maintenance that fails to make building areas watertight and not subject to rot. In addition, Plaintiffs allege that these Defendants breached their duty to repair the many problems in Plaintiffs' unit and to make it fit and habitable. In support of their claim, Plaintiffs state that the building code is enacted to protect the public and that Plaintiffs are members of the class the code provisions are intended to protect. Furthermore, Plaintiffs claim that it was reasonably foreseeable to these Defendants that the failure to comply with the building code and to make repairs properly would cause injury to prospective inhabitants. As a result of Defendants' failure to comply with building codes and to make proper repairs, Plaintiffs were caused to purchase a contaminated unit, incur property damage, and suffer personal injury.

Defendants demur on the grounds that the statute of limitations has passed. Although this issue would be properly raised by a plea in bar, the Court addresses it now. Fraud and concealment, as alleged in this case, may toll the statute of limitations period. *Newman v. Walker*, 270 Va. 291, 297-97, 618 S.E.2d 336, 338-40 (2005). Since fraud tolls the statute of limitations, the time for filing clearly had not passed when Plaintiffs filed suit. Defendants also demur on the grounds that Plaintiffs do not have standing and have failed to state any claim for individual liability. Having already ruled on both of these issues, *see supra*, Part III.A.1-3, and finding

that Plaintiffs have pleaded facts sufficient to state a cause of action for fraudulent nondisclosure and concealment, the Court overrules the demurrers.

E. *Count IV: Fraud in the Inducement, Fraudulent Misrepresentation, and Actual Fraud*

Plaintiffs claim fraud in the inducement, fraudulent misrepresentation, and actual fraud against Anchor Point, Ayers, and Barber, VRE, and Villani, Jr., and all Defendants demur. Plaintiffs claim that this is in violation of the Act and of the condominium instruments, thus giving Plaintiffs the right to sue pursuant to § 55-79.53(A). *See supra*, Part III.A.1.

With respect to Anchor Point, Ayers, and Barber, Plaintiffs allege that these Defendants knew of the defective conditions in the Condominiums, including Plaintiffs' unit. Specifically, the defective conditions include water intrusion, mold, and water damage. Further, Plaintiffs allege that these Defendants were responsible for correcting the defective conditions. Ayers assured Plaintiffs that all past problems had been resolved and told Plaintiffs that no class action suit was pending against Defendants, when, in fact, both were untrue. With respect to Barber, a paragraph in an earlier count, number seventy-seven, is incorporated into Count IV by reference. Paragraph seventy-seven states that certain named Defendants, including Barber, concealed information about mold and water intrusion in Plaintiffs' unit or stated that all problems had been corrected, all while a class action was being served on them based on exactly such issues. In addition, Plaintiffs allege that the misstatements were made to mislead Plaintiffs and to induce them to purchase a unit, which Defendants knew to be suffering from water problems. Plaintiffs relied on such false statements and acted to their detriment.

Defendants Anchor Point, Ayers, and Barber demur on the grounds that Plaintiffs do not have standing, that there are no allegations against Barber, and that any statements made by Ayers and Barber were made by them as agents for Anchor Point. The Court has already ruled on standing and individual liability. *See supra*, Part III.A.1-3. As to allegations against Barber, the facts as pleaded by Plaintiffs are sufficient to state a cause of action for fraud against Barber. For these reasons, and having found that fraud has been pleaded with specificity, the Court overrules the demurrers by Anchor Point, Ayers, and Barber.

With respect to VRE and Villani, Jr., Plaintiffs allege that they relied heavily on these Defendants, both of which are advertised prominently at the Condominiums as agents for the Condominiums. Plaintiffs asked Villani, Jr.,

repeatedly about the condition of the units and were told that all problems had been resolved. Furthermore, Plaintiffs allege that VRE and Villani, Jr., must have known of the lawsuit that had been served on Anchor Point, Ayers, and Barber. Plaintiffs claim that all of these misstatements were made to mislead them and to induce them to purchase a unit, which VRE and Villani, Jr., knew had water problems. Plaintiffs relied on these misrepresentations and acted to their detriment.

Defendants VRE and Villani, Jr., demur on the grounds that Plaintiffs do not have standing and that these Defendants were agents of Anchor Point. Having already ruled on the question of standing, *see supra*, Part III.A.1 & 2, the Court focuses on Defendants' contention that, because of their agency relationship with Anchor Point, these Defendants cannot be held individually liable. According to the Act, "An action for tort alleging a wrong done (i) by any agent or employee of the declarant . . . or (ii) in connection with the condition of any portion of the condominium which the declarant . . . has the responsibility to maintain, *shall be brought against the declarant*. . . ." Va. Code § 55-79.80:1(A) (2007) (emphasis added). VRE and Villani, Jr., must be treated differently than Ayers and Barber under this statute. As Plaintiffs allege (Compl. ¶ 93), VRE and Villani, Jr., are agents for Anchor Point. Any statements made by these Defendants were made as agents for Anchor Point in an effort to induce Plaintiffs to enter into a contract with Anchor Point. VRE and Villani, Jr., do not rise to the level of co-managers of the declarant, as Ayers and Barber do. Therefore, this action is not properly brought against VRE and Villani, Jr., pursuant to § 55-79.80:1(A). For these reasons, the Court sustains the demurrers by VRE and Villani, Jr., and grants Plaintiff leave to amend.

All of the named Defendants in Count IV argue that contracts procured by fraud in the inducement are void and unenforceable as a matter of law. Therefore, to the extent that Plaintiffs want to proceed with Count IV, they cannot also raise claims in Counts I-III that arise only by virtue of their contract with Anchor Point that they seek to have voided in their request for relief. The Court is not ruling on this issue at this juncture and will address the issue based on the evidence presented at trial.

F. *Count V: Violation of the Virginia Consumer Protection Act*

Plaintiffs claim a violation of the Virginia Consumer Protection Act, Va. Code §§ 59.1-196 *et seq*. (2006) ("VCPA"), against Anchor Point, Ayers, and Barber, and all Defendants demur.

Plaintiffs state that the VCPA applies to all consumer transactions involving the offer of sale of goods to be used for personal, family, or household purposes. *See* Va. Code § 59.1-198 (2006). Their contention is that the sale of the subject condominium is a sale of goods for personal and household use within the meaning of the VCPA. The violation of the VCPA, as alleged by Plaintiffs, is through the "aforementioned acts and omissions" of Anchor Point, Ayers, and Barber, which Plaintiffs claim constitute prohibited practices within the meaning of Va. Code § 59.1-200 (2006 & Supp. 2008). Specifically, Plaintiffs allege that these Defendants violated the VCPA by (1) misrepresenting Anchor Point's, Ayers', and Barber's goods and services, specifically the construction of the units, limited common elements or areas, and common elements as having certain qualities, characteristics, uses, and/or benefits in violation of § 59.1-200(A)(2, 5, 6); (2) offering for sale defective units in violation of § 59.1-200(A)(7); and (3) using deception, fraud, false pretense, false promise, and/or misrepresentation in connection with a consumer transaction in violation of § 59.1-200(A)(10, 14). As a result of these alleged violations, Plaintiffs have suffered property damage, personal injury, and false inducement to purchase a contaminated unit. Plaintiffs assert that condominium sales are not exempted from the application of the VCPA.

These Defendants demur on the basis that the VCPA specifically excludes certain claims from its reach. According to the VCPA, "Nothing in this chapter [the VCPA] shall apply to . . . [a]ny aspect of a consumer transaction which aspect is authorized under laws or regulations of this Commonwealth. . . ." Va. Code § 59.1-199(A) (2006). Defendants argue that, because the Condominium Act provides the remedy for the violations alleged in Counts I-IV of the Complaint, the claims are excluded from the reach of the VCPA and are preempted by the Condominium Act.

The Court agrees with Defendants' argument. The Condominium Act, in particular § 55-79.53, provides the remedy as to these Defendants for such violations. The VCPA, by its very terms, does not apply. *See Board of Dirs. of the Port Royal Condo. Unit Owners' Ass'n v. Crossland Sav., FSB*, 15 Va. Cir. 239, 241 (City of Alexandria, 1989). For these reasons, the Court sustains the demurrers by Anchor Point, Ayers, and Barber, without granting Plaintiffs leave to amend.

## G. *Count VI: Negligence in Creating and Maintaining a Dangerous Condition*

Plaintiffs allege negligence by creating and maintaining a dangerous condition against Anchor Point, Ayers, Barber, Costen, and Woodfin, and all but Anchor Point demur. As discussed *supra*, Part III.A.4, the Association is a

named Defendant in the Complaint; however, Plaintiffs state in their memoranda that they maintain no cause of action against the Association. Therefore, the Association is not treated as a Defendant in Count VI herein.

The allegations against each of the named Defendants are the same to a certain extent. Each of the named Defendants holds an ownership interest in Anchor Point and in the Condominiums. Each of these Defendants had, or could assert, control over the operation and maintenance of the Condominiums through their interest in Anchor Point, as well as through their control of the Association. In addition, each of these Defendants knew or should have known that a dangerous condition existed at the Condominiums, particularly that water intrusion, excess moisture, and mold conditions, with the potential for various harmful contaminants, existed throughout the Condominiums. Plaintiffs allege that as managers of the Condominiums, and/or due to their operational control, each of the named Defendants had a duty to take reasonable care not to maintain, condone, or manage a building in a dangerous condition. These named Defendants breached their duty by failing to correct water intrusion problems, and failing to remediate and control mold growths and their resultant contaminants. Furthermore, these Defendants breached their duties to Plaintiffs by concealing information from Plaintiffs, permitting them to purchase and enter into the unit that Defendants knew had serious environmental problems, and failing to act to solve the underlying problems. As a result of these breaches of duty, Plaintiffs were exposed to dangerous conditions inside their unit, which caused them to become ill, to abandon their unit, and to incur personal injury and property damage.

Additional allegations exist with respect to Costen and Woodfin. Both own percent interests in Anchor Point, according to the Complaint. In addition, Costen and Woodfin both allegedly are members and either officers or directors in the Association, and as such exercise control and authority over repairs, maintenance, and management of the Condominiums, including the power to remedy dangerous conditions. Costen is alleged to be actively involved in the repairs of numerous water damaged units in the Condominiums through his business, Costen Floors. Woodfin is alleged to have collected, or caused to be collected, air samples from Plaintiffs' unit, acting on his own or as an agent of Anchor Point or the Association. These samples showed dangerous levels of contaminants in the unit; therefore, Woodfin had direct knowledge of the unit conditions.

All Defendants' demurrers are on the same ground, that Plaintiffs have failed to state a claim for individual liability. With respect to Ayers and Barber, for the reasons stated in *supra*, Part III.A.3, and finding that,

otherwise, Plaintiffs have pleaded facts to state a claim for negligence, the Court overrules the demurrers by Ayers and Barber.

While Costen and Woodfin are not alleged to be co-managers of Anchor Point, as Ayers and Barber are, the same logic stated in Part III.A.3, *supra*, also applies to them. Costen and Woodfin, while members of a limited liability company and thus afforded some protection under Va. Code § 13.1-1019, are not shielded completely from individual liability. The same fiduciary duties may apply to them under § 55-79.74(A) as apply to Ayers and Barber. Costen and Woodfin may be "such other . . . persons selected by the declarant to . . . exercise such powers and responsibilities otherwise assigned to the unit owners' association. . . ." Va. Code § 55-79.74(A) (2007 & Supp. 2008). As such, they would be "subject to liability as fiduciaries of the unit owners for their action or omissions during the period of declarant control. . . ." *Id.* However, the alleged duty to act on Plaintiffs' behalf does not arise from these Defendants' positions in the Association. Plaintiffs claim that the Condominiums are still under declarant control and that Anchor Point reserved to itself the power to exercise all powers and responsibilities otherwise assigned to the unit owners' association and/or its Board of Directors; therefore, the Association is powerless to act, and these Defendants have no duty to act as its officers or directors. Otherwise, Plaintiffs have made sufficient allegations in their Complaint to state a cause of action for negligence against Costen and Woodfin. Thus, their demurrers are overruled.

## H. *Punitive Damages Instruction*

The Court will not address the appropriateness of a punitive damages instruction at this stage of the case. Rather, the Court will address the issue based on the evidence heard at trial.

## IV. *Conclusion*

In summary, the Court rules as follows for the foregoing reasons. The Association's Demurrer is sustained and they are dismissed as a party to this action. Plaintiffs are granted leave to amend, if they be so advised. Ayers & Stolte's Demurrer is overruled. On Count I for breach of warranty, all demurrers are overruled. On Count II for fraudulent nondisclosure and concealment, all demurrers are overruled. On Count III for negligence per se and negligent repair, all demurrers are overruled. On Count IV for fraud in the inducement, fraudulent misrepresentation, and actual fraud, demurrers by Anchor Point, Ayers, and Barber are overruled and demurrers by VRE and

Villani, Jr., are sustained, with leave to amend granted to Plaintiffs. On Count V for violation of the VCPA, all demurrers are sustained and this count is dismissed with prejudice. On Count VI for negligence in creating and maintaining a dangerous condition, all demurrers are overruled. The Court withholds any finding on the appropriateness of a punitive damages instruction. It is so ordered. Endorsement of the order by counsel is waived, pursuant to Rule 1:13.